States v. New York Rayon Importing Co., Inc., 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577.

In the light of the above authority it is clear that this court in the present case would have no jurisdiction to award interest even if the plaintiff had a legal claim based upon the contract. It would naturally follow that plaintiff would not be entitled to interest on a claim which is not a legal obligation, and which, if it were, would not entitle it to interest.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

McSWEENY TRADE SCHOOL, Inc.,

v.

The UNITED STATES.

No. 50096.

United States Court of Claims.

Jan. 11, 1955.

# 592

Stanley L. Fildew, Detroit, Mich., for plaintiff.

William A. Stern II, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff, a trade school, sues to recover $132,206.83 for tuition and tools furnished veteran students pursuant to a contract with the Veterans' Administration. The defendant asserts three counterclaims based on prior contracts. The plaintiff was engaged in teaching automobile mechanical courses to veterans and nonveterans in Detroit, Michigan. The plaintiff furnished instruction books, supplies and equipment to veterans under two contracts with the Veterans' Administration (hereinafter referred to as the VA) covering the period from October 11, 1948, to March 31, 1949. The tuition rate for these two contracts was 62.5 cents per clock hour of instruction. Negotiations on the third contract, No. V3029–V–753, which was to become effective April 1, 1949, began in January 1949. On February 23, 1949, pursuant to the VA's request, the plaintiff submitted cost data for November and December 1948 and a projection thereof for the first 10 months of 1949. This data contained a 1,182 hours' attendance error for December 1949. This error's effect on the tuition rate is minute and was inadvertent. The data reflected a cost to the plaintiff of $900 a month rental for the school premises. This data also contained the price which was the dealers' price, that the plaintiff expected to charge the VA for the tools to be furnished under the contract. The cost of the tools was not an item included in the tuition rate, but rather was to be paid for separately. The plaintiff requested a tuition rate of 99.2 cents per clock hour of instruction. The VA, without any direct verification, which was the practice, reviewed the data and allowed 75 cents per clock hour of instruction. The contract, V3029–V–753, was executed by the plaintiff on March 14, 1949, and by the VA on March 29, 1949, and covered the period from April 1, 1949, through March 31, 1950. This contract was performed and the VA paid the plaintiff the 75-cent tuition rate and the dealers' price for the tools.

During the period of negotiations for the fourth contract, V3029–V–2176, the plaintiff was operating under a memorandum agreement dated February 1, 1950, which provided that the school would be paid for services in the amounts set forth in the formal contract. It further provided that it would remain in effect until the formal contract was approved. The plaintiff requested a 75-cent tuition rate, but the VA only allowed 49 cents stating that that was the amount determined to be fair and reasonable. The formal contract was signed on August 16, 1950, but the VA did not finally approve it until after September 18, 1950, after the plaintiff's school was closed for lack of funds. The record indicates that the plaintiff was under a great deal of pressure to accept the 49-cent rate, inasmuch as it was in need of funds and the VA had refused to pay the plaintiff anything for the instruction, etc., furnished under the memorandum agreement until the contract

was signed. The plaintiff submitted vouchers and requested payment under the contract. On September 28, 1950, the VA paid the plaintiff $9,598.52 of its claim.

The plaintiff filed its petition in this court on April 9, 1951, claiming $132,-206.83. This sum represented 75 cents per clock hour of instruction for the period from April 1, 1950, to September 18, 1950, the period covered by the memorandum agreement, and the $15,590.59 cost of tools furnished during that period. On May 17, 1951, the VA sent the plaintiff's attorney a notice that the tuition rate for the third contract, V3029-V-753, should have been negotiated at 55 cents per clock hour and enclosed a summary of the recomputation.

· The defendant admitted in its amended answer that the plaintiff furnished instruction, etc., under the memorandum agreement and the fourth contract, and agreed at the trial that $88,777.90 is due the plaintiff under the fourth contract. Of this, $73,187.31 represents tuition at the rate of 49 cents per hour and $15,590.59 represents charges for tools.

Therefore, the only part of the plaintiff's claim that is in dispute is the $43,444.12, which represents the difference between the 75-cent rate that the plaintiff contends it is entitled to under Public Law 610, 64 Stat. 336, 338, 38 U.S.C.A. following section 745, and the 49-cent rate that the defendant concedes is due the plaintiff.

The defendant has three counterclaims. The first is for $66,648.20, which represents the difference between the 75-cent rate paid the plaintiff under the third contract, V3029-V-753, and the 55-cent rate that the defendant contends was a fair and reasonable rate for that contract. The defendant contends that the plaintiff misrepresented the rent that it was paying and the number of students that it expected to instruct when it submitted the cost data which was used in determining the 75-cent rate for the third contract, V3029-V-753. The defendant contends that Mr. McSweeny was the owner of the lease for the school premises and that he was only paying the owner $650 a month for the whole building, whereas the cost data indicated that he was paying $900 a month for half of the building. The evidence clearly does not support this contention. Kathleen E. Snider was the owner of the premises located at 3646 Woodward Avenue. She had originally leased the premises to Mr. McSweeny, but through the execution of new leases and various assignments, which are in the record, Mrs. McSweeny became the lessee several years before Mr. McSweeny contracted with the defendant. Mrs. McSweeny subsequently transferred the lease to a corporation of which she owned the entire stock. Mrs. McSweeny, and later her corporation, subleased 13,000 square feet of the premises to Mr. McSweeny and the plaintiff for $900 a month with an option in the sublessee to sublease the entire premises for $1,-850 a month. The entire premises were subsequently subleased to the plaintiff. Some of this rental was in fact paid and some is still owing. Expert testimony established that the fair rental value of the premises in 1948 was $18,-000 a year. The rental figure employed in determining the tuition rate was only $13,250. It is clear, therefore, that the defendant has failed to show any misrepresentation as to the rent.

The defendant's contention that the plaintiff misrepresented the number of students that it expected to instruct in order to obtain a higher tuition rate is also without merit. The plaintiff was requested to submit cost data for November and December of 1948 and a 10-month projection thereof. The plaintiff projected 129,600 hours on the estimated enrollment of 100 students for 30 clock hours of instruction per week. This data was furnished on February 23, 1949. The plaintiff's records show that there were 70 new enrollments and an average of 90 men in attendance and six absent for the month of January. They also show that there were 29 new

enrollments and an average of 101 in attendance and nine absent in February. This did not represent such a sharp increase in students that would require the plaintiff to notify the VA that its 100 estimate was so inaccurate that a new tuition rate was warranted. It is true that the enrollments increased considerably toward the end of the contract. This was partly due to the VA's request of plaintiff to take several hundred students from another school that had closed. This could not have been foreseen and we believe that the plaintiff's estimate at the time made with the facts then available was reasonable. The defendant has not proved that the plaintiff misrepresented any material fact and its first counterclaim must, therefore, fail.

The defendant's second counterclaim is for $57,245.86. This sum represents the discount that Mr. Allen or his corporation obtained from the tool supplier for the tools that were furnished the plaintiff for the first three contracts. The defendant contends that it is entitled to recover this sum because it represents an unreasonable cost for the tools and was, therefore, a breach of the contracts. When the contracts were entered into the plaintiff submitted the dealers' prices as the expected cost of the tools and the dealers' price lists were made a part of the contracts. The VA regulations contained two pertinent restrictions relating to charges for tools, which were as follows:

"(e) *Charge.* The amounts billed by the institution to the Veterans' Administration for 'supplies' rests on the following: (1) The institution will assure itself that the Veterans' Administration is not billed at an unreasonable price. * * * (6) If the institution furnishes items of 'supplies,' specifically purchased for trainees only, i. e., not handled through a book or supply store for all students, such items will be billed at cost to the institution." 38 C.F.R. 21.539.

The plaintiff contends that the prices charged were reasonable since the plaintiff had a poor credit standing and, therefore, could not take advantage of a larger discount, and further that the above regulations were only guides in determining a reasonable price and were merged into the executed contracts. The regulations were not merged into the contracts. Article 8 of the contracts specifically provided that the terms of the contracts were subject to and governed by the VA regulations. The regulations required the plaintiff to furnish the tools to the VA at the most reasonable price that the plaintiff could obtain. The plaintiff purchased the tools from a close friend and employee, Mr. Allen, and later Mr. Allen's corporation. Mr. Allen, and later his corporation, purchased the tools from the tool supplier at a 25 to 33⅓ percent discount, but charged the plaintiff the dealers' price. The tools were delivered direct to the plaintiff since Mr. Allen had no warehouse facilities. Mr. Allen received $57,245.86 for lending his credit and the credit of his corporation which had no assets and no function other than the paper transfer of the tools. Although the financial arrangements between the McSweenys and Mr. Allen are unclear, the record fails to show that the McSweenys or the plaintiff received any credit for the discounts given Mr. Allen and his corporation. The evidence is insufficient to show that this transaction was fraudulent, but it is sufficient to show that it was unnecessary and that the plaintiff failed to bill the VA at reasonable prices for the tools. Mr. McSweeny or the plaintiff could have purchased the tools at a larger discount than the dealers' price, notwithstanding his poor credit position, because other suppliers were willing to furnish the tools at a larger discount to schools having contracts with the VA. The discounts would not have been as much as 25 to 33⅓ percent. It is found from a consideration of the whole record that the tools could have been purchased by

Mr. McSweeny or the plaintiff, directly, or through Mr. Allen, for a discount of at least $45,795. Therefore, since the regulations required the prices charged the VA for the tools to be reasonable and since the contracts specifically stated that they were subject to and governed by the regulations, the defendant is entitled to recover $45,795 on its second counterclaim as an unreasonable sum charged the VA for the tools.

The defendant's third counterclaim was one charging a duplication of cost. This contention, however, has been abandoned. The defendant now contends that if the second counterclaim is allowed it is entitled to the return of the 10 percent handling charges paid the plaintiff on the amount of the second counterclaim. The plaintiff was paid under Article 1, subsection (e), of the contracts, 10 percent of the tool price as handling charges. Inasmuch as we have held that the defendant is entitled to a return of $45,795 of the tool charges, it follows that it is also entitled to a return of the 10 percent handling charge thereon, or $4,579.50.

We turn now to the plaintiff's claim relating to Public Law 610. The tuition rate paid by the VA to schools was the " 'customary cost of tuition' " as defined by statute. If the school had no " 'customary cost of tuition' " the VA paid a negotiated fair and reasonable rate. Section 2 of Public Law 610;[1] *inter alia,* defines " 'customary cost of tuition' ", indicates the type of institutions that do not have a " 'customary cost of tuition' ", and provides that the Administrator shall determine a fair and reasonable rate for them. It then provides that:

> " * * * *In any case* in which one or more contracts providing a rate or rates of tuition have been entered into in two successive years, *the rate* established by the most recent contract *shall be* considered to be *the customary cost of tuition* notwithstanding the definition of 'customary cost of tuition' as hereinbefore set forth." [Italics supplied.]

The above-quoted section is very clear and leaves little room for argu-

---

1. Paragraph 11 of part VIII of the Veterans' Regulation Numbered 1(a), as amended, is amended by adding at the end thereof a new subparagraph (d) as follows:

   "(d) As used in this part, the term 'customary cost of tuition' or 'customary charges' or 'customary tuition charges' shall mean that charge which an educational or training institution requires a nonveteran enrollee similarly circumstanced to pay as and for tuition for a course, except that the institution (other than a nonprofit institution of higher learning) is not regarded as having a 'customary cost of tuition' for the course or courses in question in the following circumstances:

   "(A) Where the majority of the enrollment of the educational and training institution in the course in question consists of veterans in training under Public Laws 16 and 346, Seventy-eighth Congress, as amended; and

   "(B) One of the following conditions prevails:

   "1. The institution has been established subsequent to June 22, 1944.

   "2. The institution, although established prior to June 22, 1944, has not been in continuous operation since that date.

   "3. The institution, although established prior to June 22, 1944, has subsequently increased its total tuition charges for the course to all students more than 25 per centum.

   "4. The course (or a course of substantially the same length and character) was not provided for nonveteran students by the institution prior to June 22, 1944.

   "For any course of education or training for which the educational or training institution involved has no customary cost of tuition, a fair and reasonable rate of payment for tuition, fees, or other charges for such course shall be determined by the Administrator. In any case in which one or more contracts providing a rate or rates of tuition have been entered into in two successive years, the rate established by the most recent contract shall be considered to be the customary cost of tuition notwithstanding the definition of 'customary cost of tuition' as hereinbefore set forth. For the purpose of the preceding sentence 'contract' shall include

ment. If the VA wanted to contract with a school that met the 2-year requirements, which the plaintiff did, it had to pay the rate of the most recent contract because the statute said that was considered the customary cost of tuition. The plaintiff's most recent contract was V3029–V–753 and the tuition rate was 75 cents. Under the plain terms of this section the plaintiff was entitled to the 75-cent rate. The defendant's argument that the plaintiff was not entitled to the 75-cent rate because of its construction of two administrative decisions [2] relating to courses of less than 30 weeks is of no avail, because if its construction is correct then those parts of the decisions are invalid as being contrary to the statute.

■ The defendant contends that if the plaintiff was entitled to the 75-cent rate, then it waived it because it accepted the 49-cent rate. We do not believe that the plaintiff has waived its right to the 75-cent rate. The plaintiff furnished its services beginning on April 1, 1950, under a memorandum agreement dated February 1, 1950. This agreement provided that the plaintiff would be paid for its services in the amounts set forth in a formal contract which was to be executed. It also provided that it would remain in effect until the formal contract was approved. During the period of negotiations Public Law 610 was enacted (July 13, 1950), which we have held entitled the plaintiff to the 75-cent rate. The VA took the position that Public Law 610 did not cover courses of less than 30 weeks and refused to give the plaintiff the 75-cent rate, and refused to pay the plaintiff for its services performed after April 1, 1950, until it signed the formal contract at the 49-cent rate. The formal contract was signed on August 16, 1950, but was not finally approved by the VA until after September 18, 1950, the date that the plaintiff closed for lack of funds. The plaintiff contends that the formal contract, V3029–V–2176, never became a binding contract between the parties since it was not approved by the VA until after the school had closed. The plaintiff performed the services under a valid memorandum agreement for a rate to be established in a formal contract. Public Law 610 provided, insofar as the plaintiff is concerned, that the rate was 75 cents. The VA lacked the right and power to pressure the plaintiff into accepting a lower rate than that established by Congress. The acceptance of the lower rate did not amount to a waiver of the right to the legal rate and the plaintiff is entitled to recover the statutory rate. Glavey v. United States, 182 U.S. 595, 21 S.Ct. 891, 45 L.Ed. 1247; United States v. Andrews, 240 U.S. 90, 36 S.Ct. 349, 60 L.Ed. 541, and the cases there cited. The regulations prevented the plaintiff from charging the VA more than a reasonable cost for the tools and the statute prevented the defendant from requiring the plaintiff to accept less than the 75-cent rate. Accordingly, the plaintiff is entitled to recover $116,631.43 [3] as tuition, computed at the 75-cent rate, $15,-590.59 for the tools which the defendant concedes is due, for the period April 1, 1950, to September 18, 1950; less the unreasonable cost for the tools and the 10 percent handling charge thereon furnished under the first three contracts, or $50,374.50 ($45,795+$4,579.-50).

The plaintiff is entitled to judgment in the amount of $81,847.52.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

contracts under Public Law 16 (Seventy-eighth Congress, March 24, 1943), Public Law 346 (Seventy-eighth Congress, June 22, 1944), or any other agreement in writing on the basis of which tuition payments have been made from the Treasury of the United States."

2. 38 C.F.R. 21.467(c); 38 C.F.R. 21.693.

3. This is the net amount after deduction of the $9,598.52 tuition paid plaintiff by the VA.