**ART CENTER SCHOOL**
v.
**The UNITED STATES.**
No. 228–53.

United States Court of Claims.
June 5, 1956.

James Perkins Parker, Washington, D. C., for plaintiff.

Martin E. Rendelman, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

Plaintiff, an educational institution, in this action seeks to recover the difference between its customary rate and the rate it was paid under an agreement entered into initially on September 23, 1946, for the vocational rehabilitation of disabled veterans pursuant to Public Law 16, 57 Stat. 43, Regulation No. 1(a), pt. 8, 38 U.S.C.A. following section 745 which rate was, in accordance with the agreement of the parties, also charged by plaintiff for instruction and training furnished to nondisabled veterans under Public Law 346, 58 Stat. 284, 287, 38 U.S.C.A. § 693 et seq. Plaintiff further seeks to recover the expenses incurred as a result of an audit it caused to be performed in preparation of this suit.

Defendant contends that plaintiff is bound by the contracts executed by the parties for vocational rehabilitation of disabled veterans in accordance with the authority provided therefor in Public Law 16 and that plaintiff, by its course of conduct during the period herein concerned, effectively waived its "customary rate" for education and training of nondisabled veterans enrolled pursuant to Public Law 346. The facts necessary to this opinion briefly stated are these. Plaintiff is a nonprofit educational institution incorporated under the laws of the State of California and is engaged in teaching, among other things, art and photography. During the period pertinent to this action it was engaged in a program of vocational rehabilitation for disabled veterans pursuant to the provisions of Public Law 16, supra, and the education and training of other than disabled veterans under the provisions of Public Law 346, supra.

No contract was ever entered into between plaintiff and defendant concerning other than disabled veterans.

Beginning in September 1943, a contract was entered into between plaintiff and the defendant, acting through the Veterans' Administration, covering Public Law 16 students. The contract rate paid for such students for both the art course and the photography course was $41.66 per 4-week period. Payments were made by the defendant on vouchers submitted to it by the plaintiff in that amount for each veteran. Although there was no contract covering Public Law 346 students, payment was made for their training at the same rate as for Public Law 16 students on vouchers submitted by the plaintiff at those rates.

About June 24, 1946, plaintiff advanced its tuition rates and in July or August 1946 it advised the Veterans' Administration Regional Office in Los Angeles that commencing September 23, 1946, it was increasing its catalog rates. The new rates were submitted to Mr. David Slayton, the contract officer assigned to the negotiation of a contract with plaintiff for the training of Public Law 16 students, and referred by him to Mr. Charles Binder, chief of the training facilities section, and Mr. Raymond J. Royer, supervisor of the contract unit. These officials considered that inasmuch as the new proposed rates represented a radical increase over the rates previously charged by plaintiff and were considerably higher than the rates charged by similar institutions offering similar courses in the same locality, a lower and more reasonable rate should, if possible, be negotiated. Accordingly, a conference was arranged in August of 1946 which was attended by representatives of both plaintiff and defendant. After further negotiations, together with a cost analysis furnished by plaintiff and inspection of plaintiff's books by the Veterans' Administration office, a contract was entered into between plaintiff and defendant for the period September 23, 1946 to May 16, 1947. The contract covered Public Law 16 students and it was the understanding of the parties that the same rates would apply to Public Law 346 students. Accordingly, plaintiff submitted vouchers and was paid tuition at the contract rate. The contract was renewed on two separate occasions and plaintiff was paid as above described.

At no time from September 23, 1946 to February 24, 1949, did plaintiff express dissatisfaction with the rates agreed upon and no pressure or coercion was exerted upon plaintiff to accept a rate lower than its "customary rate." However, the rate which plaintiff was paid was at a lower rate than its "customary rate" for nonveteran students, and it was arrived at after a conference in which plaintiff's officials urged acceptance by the Veterans' Administration of the increased rates. At that time plaintiff's representatives were asked to justify the increase. The school was asked to go over its costs and to allow an inspection of its records by the Veterans' Administration officer.

Plaintiff had constructive notice of public laws and regulations given by publication in the Federal Register and had actual notice of laws and regulations pertaining to the training of nondisabled veterans pursuant to Public Law 346.

The plaintiff in 1950 applied for and was granted a review by the Veterans' Education Appeals Board covering a period after the period now in suit.

Pursuant to rule 38(c) of this court, 28 U.S.C.A., by stipulation between the parties hereto, the trial was limited to the issues of law and fact relating to the right of plaintiff to recover, reserving the determination, if necessary, of the amount of recovery and the amount of offsets for further proceedings.

Public Law 16, supra, enacted March 24, 1943, provided in pertinent part as follows:

"* * * shall have the power and duty to prescribe and provide suitable training * * * and, in addition, he may, by agreement or contract with public or private institutions or establishments, provide

for such additional training facilities as may be suitable and necessary to accomplish the purposes of this part."

Thus it can be seen that the Administrator had a right, under Public Law 16, to execute contracts for such training. However, Veterans' Administration regulations, 38 CFR § 35.018 (1939 Ed., 1945 Supp.), required that " * * * the Administrator *shall* pay * * * the customary cost of tuition, * * * fees, * * *." (Italics supplied.) This regulation was based on the Administrator's Decision, Veterans' Administration, No. 638, dated March 19, 1945, which stated in pertinent part as follows:

" * * * *the only rates that may be paid for veterans entered as trainees under the provisions of said Act* [P.L. 16] *are the regular established rates paid by all other enrollees* (in effect at the time the trainee enters the university, *or as may thereafter nondiscriminatorily be established for all students*) * * [Italics supplied.]

\* \* \* \*

" * * * The Service Letter of October 24, 1944 authorizing increased rates * * * attempted to preclude the increasing of rates after June 22, 1944, the effective date of Public No. 346. *This was in error* and was corrected by the Service Letter of December 7, 1944, providing that regular increased rates established by the institution, if nondiscriminatory, may be paid by the Veterans Administration. * * * [Italics supplied.]

\* \* \* \*

"The foregoing decision is hereby promulgated for observance by all officers and employees of the Veterans Administration."

This regulation continued in effect and was reaffirmed in Veterans' Administration Manual M7–5, paragraph 45, dated April 15, 1947, which provided, with respect to Public Law 16, that

" " * * * * contracts covering courses of vocational rehabilitation for Part VII [P.L. 16] trainees *shall provide for payments based on the charges customarily made other students pursuing the same courses* * * *." [Italics supplied.]

■ This instruction has the binding effect of a statute Atchison, Topeka & Santa Fe Railway Co. v. Scarlett, 300 U.S. 471, 57 S.Ct. 541, 81 L.Ed. 748.

Public Law 346, supra, known as the Servicemen's Readjustment Act of 1944, as amended, 59 Stat. 623, 624, provided in pertinent part as follows:

"2. Any such eligible person shall be entitled to education or training at an approved educational or training institution for a period of one year plus the time such person was in the active service on or after September 16, 1940, * * * but in no event shall the total period of education or training exceed four years: * * *.

\* \* \* \* \* \*

"5. The Administrator shall pay to the educational or training institution, for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, * * * Provided, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year unless the veteran elects to have such customary charges paid in excess of such limitation, in which event there shall be charged against his period of eligibility the proportion of an ordinary school year which such excess bears to $500: * * *."

Paragraph 8 of the Act of June 22, 1944, 58 Stat. 284, 289, provides:

"No department, agency, or officer of the United States, in carrying out the provisions of this part, shall exercise any supervision or control,

whatsoever, over any State educational agency, or State apprenticeship agency, or any educational or training institution: * * *."

The mandate contained in paragraph 8 above was incorporated into regulations by the Administrator, which were issued March 7, 1945. 10 Fed.Reg. 2618; 38 CFR § 36.027 (1939 Ed., 1945 Supp.).

 Thus under the regulation defendant had no responsibility for or power over plaintiff or any other school except to pay them for educating veterans. Hemphill Schools, Inc. v. United States, Ct.Cl., 135 F.Supp. 946, and when defendant's agents required a cost analysis, inspection of plaintiff's books, and negotiations as to rates, they exceeded the authority granted them by statute and regulations. When the tuition rates were raised for nonveteran students, the only duty of the Veterans' Administration was to see that the rates were nondiscriminatory. If found to be the catalog rates for nonveteran students, under statute, regulations, and instructions, the defendant's agents were without authority to pay any rate for Public Law 16 and Public Law 346 students which was lower than said catalog rate. Such lower rate would be a nullity and without force and effect.

This is borne out by the decisions of the Veterans' Education Appeals Board wherein the board held that the Administrator was without authority to contract for the payment of any amount other than the customary cost of tuition. Capital Radio Engineering Institute, Inc. v. Administrator of Veterans Affairs, VEAB Docket No. 15, February 6, 1953; Northwestern Institute of Foot Surgery and Chiropody v. Administrator of Veterans Affairs, VEAB Docket Nos. 39 and 177 October 17, 1952; Lincoln University v. Administrator of Veterans Affairs, VE AB Docket No. 475, October 30, 1953.

Moreover, the Veterans' Education Appeals Board in its decision on the appeal of this plaintiff found that plaintiff was entitled to the "customary costs" of tuition notwithstanding the contract which was entered into between plaintiff and defendant. Art Center School v. Administrator of Veterans Affairs, VEAB Docket No. 18, July 17, 1953.

The aforementioned Veterans' Education Appeals Board was created under Public Law 610, 64 Stat. 336, to review similar decisions of the Administrator of Veterans Affairs as are involved here. The Supreme Court has held that the rulings, interpretations, and opinions of an Administrator, while not controlling upon the courts, do constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124.

The defendant says, however, that plaintiff is estopped from asserting the rights given it by statute because of the signed contracts calling for a lesser rate.

Inasmuch as the plaintiff's claims are founded upon statute, rules, and regulations, we do not think it thereby relinquished the right to claim the further compensation allowed by law. This court held in A. H. Bull Steamship Co. v. United States, 108 U.S. 95, 123 Ct.Cl. 520, and Southeastern Oil Florida, Inc., et al. v. United States, 119 F.Supp. 731, 127 Ct.Cl. 409, that the parties could not, by contract, change the terms prescribed by statute. Again in Dyer v. United States, 20 Ct.Cl. 166, 171; this court also held:

"A salary that is established by statute cannot be increased nor diminished by executive officers. It is not a subject of contract between such officers. The incumbent of an office is entitled to the salary attached thereto by law, *and if he receives a less sum from disbursing officers he can claim and receive the balance.*" [Italics supplied.]

Again, in McSweeny Trade School, Inc. v. United States, 127 F.Supp. 591, 131 Ct. Cl. 445, 454, this court, relying on Glavey v. United States, 182 U.S. 595, 21 S.Ct. 891, 45 L.Ed. 1247, and United States v. Andrews, 240 U.S. 90, 36 S.Ct. 349, 60 L.Ed. 541, held that the Veterans' Administration lacked the power to pressure plaintiff into accepting a lower rate than that established by Congress. This court

permitted recovery, holding that the acceptance of the lower rate did not amount to a waiver of the legal rate.

Thus, the law basically obligated the Administrator to make payments for the services rendered according to the measure and guide of the statute and regulations, and when he adopted the mechanism of a contract as a vehicle for the discharge of that duty, it was his duty to make the contract conform to the rule of the statute and regulations.

The petition in this action was filed May 27, 1953. Defendant contends that all that portion of plaintiff's claim which accrued prior to May 27, 1947, is barred by the 6-year statute of limitations, 28 U.S.C. § 2501. It is plaintiff's contention that the statute was tolled by reason of the administrative remedy provided by Public Law 610, supra, which plaintiff alleges it was required to pursue.

The pertinent portion of Public Law 610, enacted July 13, 1950, reads as follows:

> " * * * Any educational or training institution which is dissatisfied with a determination of a rate of payment for tuition, fees, or other charges under the foregoing provisions of this paragraph, or with any other action of the Administrator under the amendments made by the Veterans' Education and Training Amendments of 1950, shall be entitled, upon application therefor, to a review of such determination or action * * *."

It has been determined by this court that the pendency of administrative proceedings does not toll the statute of limitations, Gray v. United States, 124 Ct. Cl. 313 and Harmon v. United States, 124 Ct.Cl. 751, except in such instances where exhaustion of administrative remedy is requisite to suit in the courts. Cuiffo v. United States, 131 Ct.Cl. 60.

The language of Public Law 610, " * * * shall be entitled, upon application therefor," is not such as to imply compulsory exhaustion of the remedy before suit. Rather, its words are permissive in character and would not toll the statute of limitations.

Public Law 610 further provides:

> "Any educational or training institution which has a contract covering any period subsequent to August 24, 1949, shall be entitled to a review by the Veterans' Education Appeals Board of the rate of tuition, fees and other charges established in such contract."

In its opinion, the Veterans' Education Appeals Board, on plaintiff's appeal determined that the board's jurisdiction was not retroactive and was limited to contracts whose terms were concluded after August 24, 1949. This is the date of enactment of Public Law 266, 81st Congress, 63 Stat. 631, 654, the predecessor to Public Law 610, which created the Veterans' Tuition Appeals Board to deal with such controversies. Public Law 610 specifically provided jurisdiction retroactive to that date. Before that date there was no administrative remedy provided, and therefore nothing to toll the statute of limitations.

Plaintiff then argues that the statute of limitations did not begin to run until the "mistake" was discovered on June 30, 1950. However, in its brief plaintiff states that it protested the imposition of the rate from the very beginning. It would not seem consistent to assert on the one hand that there was a mistake which was not discovered until June 30, 1950, and on the other hand argue that it had protested the rate from the beginning.

There is no fact showing that defendant concealed from plaintiff the fact that it had a cause of action in September 1946. As a matter of fact, in addition to the constructive notice of public laws and regulations given by publication in the Federal Register, plaintiff had actual notice of the statutory and regulatory provisions pertaining to the training of nondisabled veterans pursuant to Public Law 346. Plaintiff was aware that no contract was required or necessary for the training of veterans thereunder and

that the only guide provided therein as to the rate to be paid for such training was the customary cost of tuition.

If it was either a mistake or perhaps ignorance on the part of plaintiff that prevented it from knowing of its right of action, that fact cannot be charged against the defendant to the extent that it would toll the statute of limitations.

As was stated in Thomas v. United States, 125 Ct.Cl. 76, 80, "Generally, lack of knowledge of the existence of a cause of action or of facts which constitute the cause will not postpone the operation of the statute of limitations. 54 C.J.S., Limitation of Actions, § 205, p. 216."

Therefore, we conclude that the appeal to the Veterans' Education Appeals Board was not an administrative remedy as would toll the statute of limitations, and plaintiff's cause of action accrued when the first payment became due after September 23, 1946, the date the negotiations took place on contract No. 309. This was the date when the statute of limitations began to run.

This is a continuing claim and a new cause of action arose when each payment became due. The portion of plaintiff's claim which accrued more than 6 years prior to filing complaint herein is barred by the 6-year limitation statute.

██ Plaintiff, in addition to its other claims, also seeks to recover expenses it alleges it was put to by reason of defendant's refusal to pay the customary rate in accordance with the statutes and regulations. Plaintiff contends that because of defendant's wrongful refusal to pay the statutory rate of tuition, it became necessary to perform an audit in order to determine the amount to which it alleges it is entitled by reason of such breach.

No authority exists for payment of expenses incurred in preparation of suit. Walling v. Norfolk Southern Railway Co., 162 F.2d 95, 96.

██ Plaintiff contends for certain rights under its refund policy. Plaintiff further contends that it is entitled to the refund schedule as set forth in Veterans' Administration Manual M7–5, rather than the proration of charges in accordance with the period of the veteran's attendance, as apparently was done in this case. However, the briefs are silent on this last point, and we treat this portion of the claim as having been abandoned.

Plaintiff is entitled to recover the difference between its customary rate and the rate paid under the contracts from May 27, 1947 to February 28, 1949. Plaintiff is not entitled to recover the costs and expenses alleged in its third cause of action.

The amount of recovery is reserved for further proceedings in accordance with rule 38(c) of this court.

JONES, Chief Judge, and MADDEN WHITAKER and LITTLETON, Judges, concur.