**GERMAIN SCHOOL OF PHOTOGRAPHY, INC.**
v.
**UNITED STATES.**
No. 450–56.

United States Court of Claims.
July 15, 1960.

Samuel C. Berson, New York City, for plaintiff.

David Orlikoff, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

DURFEE, Judge.

This case concerns a claim and a counterclaim which involve the correct rate at which plaintiff ought to have been paid for the period from May 1, 1950, to April 30, 1951, for the training of veterans in camera repair and mechanics under the Servicemen's Readjustment Act of 1944.[1] The plaintiff was incorporated in New York State and was approved by the State authorities to receive tuition payments for training veterans. Prior to March 1949 plaintiff gave courses in portrait photography, commercial photography, airbrush technique, natural color photography, and retouching. That month it added a course in "Camera Repair and Mechanics" to its curriculum.

It is the plaintiff's position that the rate appearing in contract V3006V–899 for the period of camera repair instruction from May 1, 1950, to April 30, 1951, as modified by the action of the Veterans' Education Appeals Board (VEAB), was illegally arrived at and that plaintiff is entitled to a higher rate per student hour. It sues for the difference between the amount received and what the court may find to be a fair and reasonable rate for 94,280.5 hours of instruction. The defendant counterclaims on the ground that the VEAB was without authority to set a "fair and reasonable" contract rate, as it purported to do, inasmuch as the tuition rate had become "frozen" at the rate embodied in the previous contract, V3006V–837 for the period September 1, 1949, to April 30, 1950.

Plaintiff signed contract V–837 containing a rate of $0.406 per student hour in August 1950. The same rate was used in contract V–899 signed by plaintiff in October 1950 and by the Veterans Administration (VA) in November 1950, notwithstanding the fact that the plaintiff was not satisfied with these rates. The following written contracts were en-

---

1. P.L. 346, 78th Cong., 2nd Sess.; 58 Stat. 284.

tered into by the plaintiff for the training of veterans under P.L. 346 in its camera repair course, and two of the contracts were modified to reflect what the VEAB considered to be "fair and reasonable" rates:

| Contract No. | Period Covered | VA Tuition Per hour | VEAB Tuition Per hour |
|---|---|---|---|
| VA 6r–ve 549 | Mar. 23, 1949–Apr. 30, 1949 | $0.813 | |
| V3006V–517 | May 1, 1949–Aug. 31, 1949 | .813 | |
| V3006V–837 | Sept. 1, 1949–Apr. 30, 1950 | .406 | $0.497 |
| V3006V–899 | May 1, 1950–Apr. 30, 1951 | .406 | .523 |
| V3006V–1157 | May 1, 1951–Apr. 30, 1952 | .406 | |
| V3006V–1866 | May 1, 1954–Apr. 30, 1955 | .406 | |

Plaintiff appealed to the VEAB for higher rates on contracts V–837 and V–899. Two different hearing examiners returned decisions as to what they considered to be a fair and reasonable rate of tuition for the two periods and in each case the rate was higher than that appearing in the contract. In the course of the hearings, cost data for both of the periods involved was furnished by plaintiff. The VA excepted to each hearing examiner's decision and the final administrative determination was made by the VEAB on July 13, 1955. The Board held that a fair and reasonable rate for contract V–837 was $0.497 per student hour and $0.523 per student hour for contract V–899. The Board further said that the rate of $0.523 per student hour "effective May 1, 1951, is the customary cost of tuition established by sequence of contracts as defined in Public Law 610."

Public Law 610, 81st Cong.,[2] in addition to providing for appeal to the VEAB of tuition rates allowed by the VA, contains the following provisions:

"For any course of education or training for which the educational or training institution involved has no customary cost of tuition, a fair and reasonable rate of payment for tuition, fees, or other charges for such course shall be determined by the Administrator. In any case in which *one or more contracts* provid-ing a rate or rates of tuition *have been entered into in two successive years*, the *rate established by the most recent contract* shall be considered to be the *customary cost of tuition* notwithstanding the definition of 'customary cost of tuition' as hereinbefore set forth. * * *" (Emphasis supplied.)

The statute was effective on the date it was enacted, July 13, 1950, and it repealed that portion of the Act of August 24, 1949 (P.L. 266, 81st Cong.) which pertained to veterans' training.[3] P.L. 266 had provided for the payment of a fair and reasonable rate of tuition in the absence of a customary cost of tuition. It had also provided that the most recent negotiated tuition rate would become the customary cost in certain instances. It will be noted that the effective date of P.L. 610 was prior to the signing of either contract V–837 or V–899. The original procedures for establishing or determining fair and reasonable tuition rates were contained in Change 4 to VA Manual 7–5, dated July 1, 1948, (38 CFR 21.530).

Plaintiff, in this action, seeks review of the rate of $0.523 per student hour determined to be fair and reasonable by the VEAB for contract V–899 covering the period May 1, 1950, to April 30, 1951. Plaintiff apparently believes that the rate as finally set for that contract will

2. 64 Stat. 336.

3. 63 Stat. 631, 653.

be the customary cost of tuition within the meaning of P.L. 610. The defendant, however, maintains that the question of whether or not the VEAB was arbitrary and capricious in setting a rate of $0.523 is irrelevant and need never be reached in this suit. If, as the defendant insists, neither the VEAB nor the VA had the right to fix a fair and reasonable rate for the period from May 1, 1950, to April 30, 1951, since there was a customary cost then in existence, then the counterclaim must be granted extinguishing the plaintiff's legal right to any amount in excess of the final figure of contract V–837 covering September 1, 1949, to April 30, 1950.

■ We believe that the rate of $0.497, which became the V–837 contract rate upon the action of the VEAB, was the customary cost of tuition within the meaning of P.L. 610 and that the plaintiff's claim must be denied and the Government's counterclaim granted.

The language of P.L. 266 differs from that of P.L. 610 in that, before a contract rate can become the customary cost, there must have been contracts executed "*for* two successive years." This would seem to have required that any given course must have been in existence for 24 months or more before a customary cost would come into being. P.L. 610, however, provides that there must have been contracts entered into "*in* two successive years" before there can be a customary cost. In other words, P.L. 610 is satisfied if there have been contracts in effect during more than one calendar year while P.L. 266 required that there be contracts executed covering at least two twelve-month periods.

It is true, of course, that there was no customary cost of tuition for plaintiff's camera repair course on May 1, 1950, the beginning date of contract V–899, since P.L. 266 was still in effect on that date and the camera repair course had not been carried on for twenty-four months. But, in November 1950 there *was* a customary cost for the course, measured by the rates in contract V–837 covering September 1, 1949, to April 30, 1950, because those rates as well as the rates in contract V–899, were contracted for after the effective date of P.L. 610.

■■ The plaintiff insists that to so hold would be to give P.L. 610 a retroactive effect in contravention of the effective date of the Act. It claims that the existence or nonexistence of a customary cost for the period covered by contract V–899 must be determined as of the beginning date of the period, that is, May 1, 1950. We do not think that this is correct. Although a contract may cover a period in time which is prior to the date of its execution, such a contract does not come into existence until it is executed. We think a legislative enactment effective on a specific date can affect transactions for a period preceding that date if the contract covering the preceding period does not come into being until after the effective date of the enactment.

The case of McSweeny Trade School, Inc. v. United States, 1955, 127 F.Supp. 591, 131 Ct.Cl. 445 is directly in point. In that case the issue concerned the proper rate for contract V3029V–2176 covering automotive mechanics' training for the period from April 1, 1950, to March 31, 1951. The contract was executed on August 16, 1950, and provided for a rate of $0.49 per student hour. The plaintiff claimed that the rate of $0.75 contained in the previous contract, V3029V–753, covering the period from April 1, 1949, to March 31, 1950, was the frozen rate within the meaning of P.L. 610. McSweeny's first VA contract had been entered into in October 1948.

The similarity between that case and this one can be readily seen. As of the beginning date of the contract period in question there was no customary cost for either McSweeny or Germain because P.L. 266 was still in effect and neither school could satisfy the requirement of two years continuous instruction in the course involved. In both cases, although the rate at issue covered a period beginning prior to the passage of P.L. 610, the contract was still under negotiation

on the effective date of the Act and was not executed until after that date.

The court was unanimous in its decision that McSweeny's tuition rate had been frozen at the rate contained in the contract covering from April 1, 1949, to March 31st, 1950, because of P.L. 610 which was in full force and effect on the date of the execution of the questioned contract rate. After setting forth the pertinent portion of P.L. 610, the court said, at page 452 of 131 Ct.Cl., at page 595 of 127 F.Supp.:

> "The above-quoted section is very clear and leaves little room for argument. If the VA wanted to contract with a school that met the 2-year requirements, which the plaintiff did, it had to pay the rate of the most recent contract because the statute said that was considered the customary cost of tuition. The plaintiff's most recent contract was [V3029V–753] and the tuition rate was [75] cents. Under the plain terms of this section the plaintiff was entitled to the [75]-cent rate.
> \* \* \* \*"

If we were to substitute "V3006V–837" and "49.7" for the bracketed material, that language might have been set down expressly for this case. The 49.7-cent per student hour rate set by the VEAB for Germain's contract V–837 was the most recent rate prior to contract V–899; V–899 was executed subsequent to the effective date of P.L. 610 at a time when the frozen rate was the only possible tuition rate. The Germain School's course in camera repair satisfied the meaning of P.L. 610 since there had been one or more contracts (VA 6r–ve 549, V3006V–517, and V3006V–837) entered into in two successive years (1949 and 1950).

The conclusion is inescapable that neither the VA nor the VEAB had any authority to disregard P.L. 610 and fix a rate other than the frozen rate or customary cost contained in the final rate of contract V–837. The question of whether the VEAB was arbitrary and capricious or not in raising the tuition rate of V–899 to only $0.523 per student hour is irrelevant. No action that the VEAB might have taken could have provided a legal rate any different from the V–837 rate of $0.497 per student hour.

For camera repair instruction given to veterans between May 1, 1950, and April 30, 1955, plaintiff has been paid for 91,-309 student hours at a rate of $0.523 per hour, the rate set by the Board, and for 2,971.5 student hours at a rate of $0.406 per hour, the original contract rate, or a total of $48,961.04. Since the defendant's counterclaim will be allowed, the tuition having been frozen at the fair and reasonable rate of contract V–837, namely, $0.497 per student hour, it follows that plaintiff ought to have been paid at that rate for the entire 94,280.5 hours of instruction. Payment at that rate would total $46,857.41 and the difference between that figure and the amount actually paid plaintiff, $2,103.63, is the measure of defendant's recovery on its counterclaim.

For the foregoing reasons, the plaintiff's petition will be dismissed and the defendant will be granted judgment on its counterclaim. Judgment will be entered for the defendant in the amount of $2,103.63.

It is so ordered.

LARAMORE, MADDEN, and WHITAKER, Judges, concur.

JONES, Chief Judge (concurring in part).

I believe the plaintiff's petition should be dismissed. I do not believe the facts in this case justify a finding that the action of the Veterans' Appeals Board was either arbitrary or capricious or not supported by substantial evidence.

As we stated in the case of Hemphill Schools, Inc. v. United States, decided July 13, 1959:

> "we are neither authorized nor disposed to substitute our judgment for that of the experienced administrative agency, unless some of the ex-

ceptions [mentioned in the opinion] * * * are found to be present."

I would also dismiss the defendant's counterclaim. The granting of defendant's counterclaim is directly contrary to the finding of the Veterans' Appeals Board. In the light of the facts of this case, I do not think we are justified in setting aside the findings of that authorized agency.