Nott, J.,
delivered the opinion of.the court:
This is an action brought by the chief clerk of the Treasury Department to recover his salary as superintendent of the Treasury building from May 1, 1877, to March 31,1880. The right to recover depends upon the construction to be given to a statute, and that question of construction is the only point involved in the case.
The Eevised Statutes, section 35, provide :
“ There shall be in the Department of the Treasury:
“ One chief clerk, at a salary of two thousand two hundred dollars a year, who shall act as superintendent of the Treasury building, and shall be entitled to an additional salary of three hundred dollars a year * * *”
Subsequent sections prescribe and define the duties of the superintendent. (Sections 240, 241.)
The Eevised Statutes, it will be noted, fixed the salary of the chief clerk at $2,200 and the “ additional salary ” of the superintendent at $300, making the total remuneration of the officer $2,500 a year, yet the Legislative appropriation Act, 20th June, 1874 (18 Stat. L., p. 90), only two days before, had appropriated $2,700 for the salary of chief clerk and $300 for the salary of the superintendent, amounts which were repeated just after the enactment of the Eevised Statutes in the Appropriation Act, 3d March, 1875 (18 id., p. 349). And it will be further noted that a statute contemporaneous with the one last named, the Sundry civil appropriation Act, 3d March, 1875 (18 *48 Stat. L., p. 396, § 2; 1 Supplmt. R. S., 159), contained a section in these words:
“ Sec. 2. That on and after July first, eighteen hundred and seventy-five, the organization of the Treasury department and the several offices thereof, and the annual salaries paid to the persons therein, shall be as follows, to wit:
“ In the office of the Secretary of the Treasury, * * * chief clerk, three thousand dollars.”
In this statute no provision was made for the superintendent of the Treasury building. On the one hand, the statute is absolutely silent concerning him; on the other, the salary of the chief clerk is fixed at precisely the same amount which the appropriation act of that and the preceding year (18 Stat. L., p. 90) gave him for performing the duties of both clerk and superintendent.
Such being tne confused condition of the statute law, Congress, by the Legislative appropriation Act, 15th August, 1876 (19 Stat. L. 143), appropriated only $2,700 for the “ chief cleric and ex officio superintendent of the Treasury, building,” and at the same time provided that the payment of the amounts appropriated for salaries should be “ in full compensation,”
The position which the claimant assumes concerning these statutes is this : That the Revised Statutes, in sections 235, 240, and 241, established and defined for the superintendent of the Treasury building a distinct office with a separate salary; that the sundry civil act, 1875, did not by implication repeal these provisions, but operated, on the contrary, only to increase the chief clerk’s salary to $3,000, leaving intact the office of superintendent with its salary of $300; that the appropriation act, 1876, which made no definite appropriation for the superintendent, operated only upon the salary of the chief clerk, reducing it from $3,000 to $2,700; and that this case consequently comes under the rule laid down in Graham’s Case (1 C. Cls. R., 380), where it is held that a failure to appropriate affects no legal right, and not under the rule in Fisher’s Case (15 C. Cls. R., 323), where it is held that the reduced salaries appropriated by the act 1876 and the words “full compensation ” operated to reduce those salaries for that fiscal year.
The principle first enunciated in Graham’s Case and frequently reiterated since then (Collins’s Case, 15 C. Cls. R., 22; *49 Briggs’s Case, 15 id., 48; Freedman’s Bank Case, 16 id., 19; French’s Case, 16 id., 419) is one that cannot be questioned at this day. A statute which establishes a salary or prescribes a rate of remuneration expresses the intent of both parties, as a written agreement does in the cases of private employers and einployés and assures to a government official a fixed and certain compensation for his services. When-under such a statute, by the inadvertence of a legislative committee or the mistake of an executive officer, an inadequate sum is appropriated, it is manifest that no intent to reduce the compensation can be imputed to the appropriation act;'still more apparent would this be where no appropriation whatever was made while the office was allowed to remain and the officer to continue rendering service. The principle established by Graham’s Case is reasonable and right, one with which no just mind can quarrel, but it is not to be turned into a technicality and used to defeat the legislative intent.
The question, therefore, in the present case is whether the Eevised Statutes established a distinct officeof superintendent of the Treasury building or whether the duties of the superintendent were in effect made incidental to office of tho chief clerk.
In this country, where statute law is the hurried work of over-busy individuals, very little importance can be attached to accidents of phraseology. Every year of judicial experience renders plainer the fact that judges to interpret aright must put themselves in th.e position of the legislators who made the statute, and gather from its general purposes the meaning of its obscurer parts. We therefore attach no great weight to the term “additional salary” in the Eevised Statutes, and come to the question whether Congress intended by the section (235) to create one office or two.
The test which we apply to this provision is a very simple one, viz: Could the claimant have declined the'office of superintendent and accepted the office of chief clerk, or could he have-resigned the one and retained the other ?
The action of the Secretary of the Treasury, and of the claimant himself in this case, demonstrates by a practical illustration what the reply to the foregoing questions must be. The *50 only appointment to office which the one gave and the other received was this:
“Treasury Department,
“Office of the Secretary,
“ Washington. D. C., April 30, 1877.
“ J. K. Upton, Esq.,
“ Chief of Division:
“ Sir : You are hereby promoted and appointed chief clerk of this department, with compensation at the rate of $2,700 per annum, to take effect on the 1st proximo.
“ I am, very respectfully,
“John Sherman,
“ Secretary.”
Under that appointment as chief clerk the claimant proceeded to discharge the duties of superintendent of the Treasury building, and it is manifest that neither he nor the Secretary of the Treasury nor any other person ever supposed that the duties of chief clerk and superintendent were severable, and that the officer could perform the one and refuse the other. It would indeed be a sufficient answer to this action to say that if the position of superintendent was a distinct statutory office the claimant never was appointed to it. Two distinct offices may be held by one person, but they cannot be deemed distinct when they must be held by one person. The language of the appropriation act, 1876, is “for the chief clerk and ex officio superintendent of the Treasury building,” and it is manifest that Congress understood the position of superintendent to be precisely what the Secretary of the Treasury and the claimant himself understood it to be, viz, an addendum to the office of chief clerk, for which additional compensation was in fact allowed; sometimes, nominally, distinct, as in the Devised Statutes; sometimes incorporated in a general sum, as in the sundry civil act, 1875, but always the same in amount, and practically, if not critically, covered by the term “ ex offieio superintendent of the Treasury building.”
The judgment of the court is that the petition of the claimant be dismissed.
Weldon, J., was absent when this case was heard, and took no part in the decision.