Richardson, Ch. J.,
delivered the opinion of the court:
The claim set up in this case is that the claimant was appointed one of the fourteen Indian agents for the tribes east of the Rocky Mountains and north of New Mexico and Texas authorized by Revised Statutes, section 2n52, and is entitled to the annual salary of $1,500, as thereiu provided. Having held the office two years, and having been paid only $1,200 a year, he now asks judgment for the difference.
Tbe difficulty in case of the claimant is that it does not appear that he was one of the fourteen agents authorized by the Revised Statutes, but that his appointment and compensation depend wholly upon the appropriation Acts of May 11, 1880 (21 Stat. L., 114), and of March 31, 1881 (21 Stat. L., 485), in each of which the salary is fixed at $1,200 a year.
*170 Section 2052 of the Revised Statutes authorized the appointment of fourteen agents for the tribes east of the Rocky Mountains and north of New Mexico and Texas, without naming’ any particular agency, and twenty-eight other agents for other tribes, making forty-two in all.
The acts of 1880 and 1881 above referred to appropriate salaries for sixty-eight agents by the former act and sixty-six by the latter act, each for a specific agency therein named; but in no case do they provide for one or more agents for particular tribes, as do.the Revised Statutes. In each of these acts there was an appropriation of $1,200 for an agent “ at the Qua-paw Agency.”
It is true that this agency was east of the Rocky Mountains and north of New Mexico, but there were thirty-one such agents specifically provided for by name in those appropriation acts, and we cannot say that the claimant or any other of them were of the fourteen mentioned in the Revised Statutes. They are not so designated in these acts and are not so appointed.
It would seem that Congress abandoned the appointment of agents under the provisions of the Revised Statutes, section 2052, and superseded that section for the time being by adopting the plan of providing annually for one agent at each named agency, largely increasing the number and fixing the salary of each separately. While but forty-two were authorized by the Revised Statutes, the appropriation act of 1874 provided for sixty-nine, that of 1875 seventy, and those of subsequent years still different numbers. (Supplement to Rev. Stat., 325, note to chap. 142.)
Lightner's Case (18 C. Cls. R., 282) is relied upon on the part of the claimant as supporting his demand. In that case it was conceded at the trial, and so found as a fact, that the claimant was one of the fourteen agents east of the Rocky Mountains authorized by the-Revised Statutes. Anew trial has been granted, and the question whether the claimant was one of those agents authorized by Revised Statutes will be open for investigation and controversy.
In this case it is clear from the findings of fact, when the statutes are applied to them, that the claimant cannot claim his salary under the provisions of the Revised Statutes. The only authority for the appointment of an agent “ at the Qua-paw Agency,” by that name and title, is found in the appropria *171 tion acts which fix the salary, and that salary has been paid to the claimant.
As fixing the compensation, we give no force to the fact that the Commissioner of Indian Affairs stated to the claimant before his appointment that the salary was $1,200 a year, nor to the fact that the claimant signed pay-rolls wherein he certified that the amounts received by him at that rate were correct and just.
A salary that is established by statute cannot be increased nor diminished by executive officers. It is not a subject of contract between such officers. The incumbent of an office is entitled to the salary attached thereto by law, and if he receives a less sum from disbursing officers he can claim and receive the balance.
The judgment of the court is that the claimant’s petition be dismissed.
Nott, J.,
delivered the following opinion :
That the claimant was not one of the fourteen Indian agents authorized by the Revised Statutes (2052) is a defense which was not presented by the defendants on the trial, and in regard to it I express no opinion.
Upon the case which was presented and argued I am of the opinion that judgment should be for the defendants, for the reasons given by me in Upton’s Oase (19 C. Cls. R., 46), which are substantially as follows:
The rule laid down in Graham’s Case (1 O. Cls. R., 380) that “ a failure to appropriate affects no legal right ” is reasonable, and one with which no just mind can quarrel; bub it is not to be turned into a technicality and used to defeat a legislative intent. “A statute which establishes a salary or prescribes a rate of remuneration expresses the intent of both parties, as a written agreement does in the cases of private employers and employés, and assures to a government official a fixed and certain compensation for his services. When under such a statute, by the inadvertence of a legislative committee or the mistake of an executive officer, an inadequate sum is appropriated, it is manifest that no intent to reduce the compensation can be imputed to the appropriation act; still more apparent would this be where no appropriation whatever was made, while the office was allowed to remain and the officer to continue ren *172 ■dering service.” But where Congress by prospective appropriation acts give notice to public officers that their statutory ■salaries, for the time being at least, will be reduced, and this legislative notice is given before the service is rendered, and ■the implication of the appropriation act is so clear that no one ■can reasonably doubt the legislative intent, effect must be given ■to the legislative will.
As to services performed before the appropriation act is passed, and as to salaries over which Congress are forbidden by the Constitution to exercise such control, a different rule must prevail. But in cases where Congress occupy the position of an ordinary employer, Congress, like an ordinary employer, may reduce the compensation of the employés if that intent be signified to them in due time; and the only question for the judiciary in such cases is whether that intent has been ■signified.
In this case the signification was given before the appointment of the officer, and is too clear to be disregarded.