Laramoke, Judge,
delivered the opinion of the court.
Plaintiff, an educational institution, in this action seeks to recover the difference between its customary rate and the rate it was paid under an agreement entered into initially on September 23, 1946, for the vocational rehabilitation of disabled veterans pursuant to Public Law 16, 57 Stat. 43, which rate was, in accordance with the agreement of the parties, also charged by plaintiff for instruction and training furnished to nondisabled veterans under Public Law 346, 58 Stat. 284, 287. Plaintiff further seeks to recover the ex *220 penses incurred, as a result of an audit it caused to be performed in preparation of this suit.
Defendant contends that plaintiff is bound by the contracts executed by the parties for vocational rehabilitation of disabled veterans in accordance with the authority provided therefor in Public Law 16 and that plaintiff, by its course of conduct during the period herein concerned, effectively waived its “customary rate” for education and training of nondisabled veterans enrolled pursuant to Public Law 346. The facts necessary to this opinion briefly stated are these. Plaintiff is a nonprofit educational institution incorporated under the laws of the State of California and is engaged in teaching, among other things, art and photography. During the period pertinent to this action it was engaged in a program of vocational rehabilitation for disabled veterans pursuant to the provisions of Public Law 16, supra, and the education and training of other than disabled veterans under the provisions of Public Law 346, supra.
No contract was ever entered into between plaintiff and defendant concerning other than disabled veterans.
Beginning in September 1943, a contract was entered into between plaintiff and the defendant, acting through the Veterans’ Administration, covering Public Law 16 students. The contract rate paid for such students for both the art course and the photography course was $41.66 per 4-week period. Payments were made by tire defendant on vouchers submitted to it by the plaintiff in that amount for each veteran. Although there was no contract covering Public Law 346 students, payment was made for their training at the same rate as for Public Law 16 students on vouchers submitted by the plaintiff at those rates.
About June 24, 1946, plaintiff advanced its tuition rates and in July or August 1946 it advised the Veterans’ Administration Regional Office in Los Angeles that commencing September 23, 1946, it was increasing its catalog rates. The new rates were submitted to Mr. David Slayton, the contract officer assigned to the negotiation of a contract with plaintiff for the training of Public Law 16 students, and referred by him to Mr. Charles Binder, chief of the training facilities section, and Mr. Raymond J. Royer, supervisor of the con *221 tract unit. These officials considered that inasmuch as the new proposed rates represented a radical increase over the rates previously charged by plaintiff and were considerably higher than the rates charged by similar institutions offering similar courses in the same locality, a lower and more reasonable rate should, if possible, be negotiated. Accordingly, a conference was arranged in August of 1946 which was attended by representatives of both plaintiff and defendant. After further negotiations, together with a cost analysis furnished by plaintiff and inspection of plaintiff’s books by the Veterans’ Administration office, a contract was entered into between plaintiff and defendant for the period September 23, 1946 to May 16, 1947. The contract covered Public Law 16 students and it was the understanding of the parties that the same rates would apply to Public Law 346 students. Accordingly, plaintiff submitted vouchers and was paid tuition at the contract rate. The contract was renewed on two separate occasions and plaintiff was paid as above described.
At no time from September 23,1946 to February 24,1949, did plaintiff express dissatisfaction with the rates agreed upon and no pressure or coercion was exerted upon plaintiff to accept a rate lower than its “customary rate.” However, the rate which plaintiff was paid was at a lower rate than its “customary rate” for nonveteran students, and it was arrived at after a conference in which plaintiff’s officials urged acceptance by the Veterans’ Administration of the increased rates. At that time plaintiff’s representatives were asked to justify the increase. The school was asked to go over its costs and to allow an inspection of its records by the Veterans’ Administration officer.
Plaintiff had constructive notice of public laws and regulations given by publication in the Federal Register and had actual notice of laws and regulations pertaining to the training of nondisabled veterans pursuant to Public Law 346.
The plaintiff in 1950 applied for and was granted a review by the Veterans’ Education Appeals Board covering a period after the period now in suit.
Pursuant to rule 38 (c) of this court, by stipulation between the parties hereto, the trial was limited to the' issues of law and fact relating to the right of plaintiff to recover, reserving *222 the determination, if necessary, of the amount of recovery and the amount of offsets for further proceedings.
Public Law 16, supra, enacted March 24, 1943, provided in pertinent part as follows:
* * * shall have the power and duty to prescribe and provide suitable training * * * and, in addition, b.e may, by agreement or contract with public or private institutions or establishments, provide for such additional training facilities as may be suitable and necessary to accomplish the purposes of this part.
Thus it can be seen that the Administrator had a right, under Public Law 16, to execute contracts for such training. However, Veterans’ Administration regulations, 38 GFli §35.018 (1939 Ed., 1945 Supp.), required that “* * * the Administrator shall pay * * * the customary cost of tuition, * * * fees, * * (Italics supplied.) This regulation was based on the Administrator’s Decision, Veterans’ Administration, No. 638, dated March 19, 1945, which stated in pertinent part as follows:
* * * the only rates that may he paid for veterans entered as trainees under the provisions of said Act [P. L. 16] are the regular established rates paid by all other enroTlees (in effect at the time the trainee enters the university, or as may thereafter nondiscriminatorily be established for all students) * * * [Italics supplied.]
‡ $ $ $ $
* * * The Service Letter of October 24, 1944 authorizing increased rates * * * attempted to preclude the increasing of rates after June 22,1944, the effective date of Public No. 346. This was in error and was corrected by the Service Letter of December 7, 1944, providing that regular increased rates established by the institution, if nondiscriminatory, may be paid by the Veterans Administration. * * * [Italics supplied.]
* * * * *
The foregoing decision is hereby promulgated for observance by all officers and employees of the Veterans Administration.
This regulation continued in effect and was reaffirmed in Veterans’ Administration Manual M7-5, paragraph 45, dated April 15, 1947, which provided, with respect to Public Law 16, that
*223 * * * contracts covering courses of vocational rehabilitation for Part VII [P. L. 16] trainees shall provide for payments based on the charges customarily made other students pursuing the same courses * * *. [Italics supplied.]
This instruction has the binding effect of a statute. Atchison, Topeka & Santa Fe Railway Co. v. Scarlett, 300 U. S. 471.
Public Law 346. supra, known as the Servicemen’s Readjustment Act of 1944, as amended, 59 Stat. 623,624, provided in pertinent part as follows:
2. Any such eligible person shall be entitled to education or training at an approved educational or training institution for a period of one year plus the time such person was in the active service on or after September 16, 1940, * * * but in no event shall the total period of education or training exceed four years; * * *
$ sg: * ‡ $
5. The Administrator shall pay to the educational or training institution, for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, * * * Provided, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year unless the veteran elects to have such customary charges paid in excess of such limitation, in which event there shall be charged against his period of eligibility the proportion of an ordinary school year which such excess bears to $500: * * *.
Paragraph 8 of the Act of June 22,1944, 58 Stat. 284, 289, provides:
No department, agency, or officer of the United States, in carrying out the provisions of this part, shall exercise any supervision or control, whatsoever, over any State educational agency, or State apprenticeship agency, or any educational or training institution: * * *.
The mandate contained in paragraph 8 above was incorporated into regulations by the Administrator, which were issued March 7, 1945. 10 Fed. Reg. 2618; 38 CFR § 36.027 (1939 Ed., 1945 Supp.).
*224 Thus under the regulation defendant had no responsibility for or power over plaintiff or any other school except to pay them for educating veterans. Hemphill Schools, Inc. v. United States, 133 C. Cls. 462, and when defendant’s agents required a cost analysis, inspection of plaintiff’s books, and negotiations as to rates, they exceeded the authority granted them by statute and regulations. When the tuition rates were raised for nonveteran students, the only duty of the Veterans’ Administration was to see that the rates were nondiscriminatory. If found to be the catalog rates for non-veteran students, under statute, regulations, and instructions, the defendant’s agents Avere without authority to pay any rate for Public Law 16 and Public Law 346 students which was lower than said catalog rate. Such lower rate would be a nullity and without force and effect.
This is borne out by the decisions of the Veterans’ Edxtcation Appeals Board wherein the board held that the Administrator Avas without authority to contract for the payment of any amount other than the customary cost of tuition. Capital Radio Engineering Institute, Inc. v. Administrator of Veterans Affairs, VEAB Docket No. 15, February 6, 1953; Northwestern Institute of Foot Surgery and Chiropody v. Administrator of Veterans Affairs, VEAB Docket Nos. 39 and 177, October 17, 1952; Lincoln University v. Administrator of Veterans Affairs, VEAB Docket No. 475, October 30,1953.
Moreover, the Veterans’ Education Appeals Board in its decision on the appeal of this plaintiff found that plaintiff was entitled to the “customary costs” of tuition notwithstanding the contract which was entered into between plaintiff and defendant. Art Center School v. Administrator of Veterans Affairs, VEAB Docket No. 18, July 17, 1953.
The aforementioned Veterans’ Education Appeals Board was created under Public Law 610, 64 Stat. 336, to review similar decisions of the Administrator of Veterans Affairs as are involved here. The Supreme Court has held that the rulings, interpretations, and opinions of an Administrator, while not controlling upon the courts, do constitute a body of experience and informed judgment to which the courts *225 and litigants may properly resort for guidance. Skidmore, et al. v. Swift & Co., 323 U. S. 134, 140.
The defendant says, however, that plaintiff is estopped from asserting the rights given it by statute because of the signed contracts calling for a lesser rate.
Inasmuch as the plaintiff’s claims are founded upon statute, rules, and regulations, we do not think it thereby relinquished the right to claim the further compensation allowed by law. This court held in A. H. Bull Steamship Co. v. United States, 123 C. Cls. 520, and Southeastern Oil Florida, Inc., et al. v. United Stales, 127 C. Cls. 409, that the parties could not, by contract, change the terms prescribed by statute. Again in Dyer v. United States, 20 C. Cls. 166, 171, this court also held:
A salary that is established by statute cannot be increased nor diminished by executive officers. It is not a subject of contract between such officers. The incumbent of an office is entitled to the salary attached thereto by law, and if he receives a less sum from disbursing officers he can claim and receive the balance. [Italics supplied.]
Again, in McSweeny Trade School, Inc. v. United States, 131 C. Cls. 445, 454, this court, relying on Glavey v. United States, 182 U. S. 595, and United States v. Andrews, 240 U. S. 90, held that the Veterans’Administration lacked the power to pressure plaintiff into accepting a lower rate than that established by Congress. This court permitted recovery, holding that the acceptance of the lower rate did not amount to a waiver of the legal rate.
Thus, the law basically obligated the Administrator to make payments for tbe services rendered according to the measure and guide of the statute and regulations, and when he adopted the mechanism of a contract as a vehicle for the discharge of that duty, it was his duty to make the contract conform to the rule of the statute and regulations.
The petition in this action was filed May 27, 1953. Defendant contends that all that portion of plaintiff’s claim which accrued prior to May 27,1947, is barred by the 6-year statute of limitations, 28 U. S. C. § 2501. It is plaintiff’s contention that the statute was tolled by reason of the ad *226 ministrative remedy provided by Public Law 610, supra, which plaintiff alleges it was required to pursue.
The pertinent portion of Public Law 610, enacted July 13, 1950, reads as follows:
* * * Any educational or training institution which is dissatisfied with a determination of a rate of payment for tuition, fees, or other charges under the foregoing provisions of this paragraph, or with any other action of the Administrator under the amendments made by the Veterans’ Education and Training Amendments of 1950, shall be entitled, upon application therefor, to a review of such determination or action * * *.
It has been determined by this court that the pendency of administrative proceedings does not toll the statute of limitations, Gray v. United States, 124 C. Cls. 313 and Harmon v. United States, 124 C. Cls. 751, except in such instances where exhaustion of administrative remedy is requisite to suit in the courts. Cuiffo v. United States, 131 C. Cls. 60.
The language of Public Law 610, “* * * shall be entitled, upon application therefor,” is not such as to imply compulsory exhaustion of the remedy before suit. Rather, its words are permissive in character and would not toll the statute of limitations.
Public Law 610 further provides:
Any educational or training institution which has a contract covering any period subsequent to August 24, 1949, shall be entitled to a review by the Veterans’ Education Appeals Board of the rate of tuition, fees and other charges established in such contract.
In its opinion, the Veterans’ Education Appeals Board, on plaintiff’s appeal determined that the board’s jurisdiction was not retroactive and was limited to contracts whose terms were concluded after August 24, 1949. This is the date of enactment of Public Law 266, 81st Congress, 63 Stat. 631, 654, the predecessor to Public Law 610, which created the Veterans’ Tuition Appeals Board to deal with such controversies. Public Law 610 specifically provided jurisdiction retroactive to that date. Before that date there was no administrative remedy provided, and therefore nothing to toll the statute of limitations.
*227 Plaintiff then argues that the statute of limitations did not begin to run until the “mistake” was discovered on June 30, 1950. However, in its brief plaintiff states that it protested the imposition of the rate from the very beginning. It would not seem consistent to assert on the one hand that there was a mistake which was not discovered until June 30, 1950, and on the other hand argue that it had protested the rate from the beginning.
There is no fact showing that defendant concealed from plaintiff the fact that it had a cause of action in September 1946. As a matter of fact, in addition to the constructive notice of public laws and regulations given by publication in the Federal Register, plaintiff had actual notice of the statutory and regulatory provisions pertaining to the training of nondisabled veterans pursuant to Public Law 346. Plaintiff was aware that no contract was required or necessary for the training of veterans thereunder and that the only guide provided therein as to the rate to be paid for such training was the customary cost of tuition.
If it was either a mistake or perhaps ignorance on the part of plaintiff that prevented it from knowing of its right of action, that fact cannot be charged against the defendant to the extent that it would toll the statute of limitations.
As was stated in Thomas v. United States, 125 C. Cls. 76, 80, “Generally, lack of knowledge of the existence of a cause of action or of facts which constitute the cause will not postpone the operation of the statute of limitations. 54 C. J. S. 216.”
Therefore, we conclude that the appeal to the Veterans’ Education Appeals Board was not an administrative remedy as would toll the statute of limitations, and plaintiff’s cause of action accrued when the first payment became due after September 23, 1946, the date the negotiations took place on contract No. 309. This was the date when the statute of limitations began to run.
This is a continuing claim and a new cause of action arose when each payment became due. The portion of plaintiff’s claim which accrued more than 6 years prior to filing complaint herein is barred by the 6-year limitation statute.
Plaintiff, in addition to its other claims, also seeks to recover *228 expenses it alleges it was put to by reason of defendant’s refusal to pay the customary rate in accordance with the statutes and regulations. Plaintiff contends that because of defendant’s wrongful refusal to pay the statutory rate of tuition, it became necessary to perform an audit in order to determine the amount to which it alleges it is entitled by reason of such breach.
No authority exists for payment of expenses incurred in preparation of suit. Walling v. Norfolk Southern Railway Co., 162 F. 2d 95, 96.
Plaintiff contends for certain rights under its refund policy. Plaintiff further contends that it is entitled to the refund schedule as set forth in Veterans’ Administration Manual M7-5, rather than the proration of charges in accordance with the period of the veteran’s attendance, as apparently was done in this case. However, the briefs are silent on this last point, and we treat this portion of the claim as having been abandoned.
Plaintiff is entitled to recover the difference between its customary rate and the rate paid under the contracts from May 27, 1947 to February 28,1949. Plaintiff is not entitled to recover the costs and expenses alleged in its third cause of action.
The amount of recovery is reserved for further proceedings in accordance with rule 38 (c) of this court.
Madden, Judge; WhitakeR, Judge; Littleton, Judge; and JONES, Chief Judge, concur.
EINDINGS OE FACT
The court, having considered the evidence, the report of Commissioner William E. Hay, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff is, and at all times material herein was, a nonprofit corporation duly organized and existing under the laws of the State of California, having its present office and principal place of business at 5353 West Third Street, Los Angeles, California.
2. Pursuant to rule 38(c), by stipulation between the parties hereto, the trial was limited to the issues of law and *229 fact relating to the right of plaintiff to recover, reserving the determination, if necessary, of the amount of recovery and the amount of offsets for further proceedings.
3. Since 1932, the plaintiff has conducted an educational institution offering courses, among others, in art and photography. During the period pertinent to this action, it was engaged in a program of vocational rehabilitation for disabled veterans pursuant to the provisions of Public Law 16, 78th Congress, enacted March 24, 1943, 57 Stat. 43, and the education and training of other than disabled veterans under the provisions of Public Law 346, 78th Congress, enacted June 22, 1944, 58 Stat. 287.
4. This action is brought to recover the difference between the amount plaintiff has received from the defendant, acting-through the Veterans’ Administration, for the training of substantial numbers of both Public Law 16 and Public Law 346 veterans and the amount which it would have received had the charges to veterans been computed on the same basis as it customarily charged nonveterans during the period September 23,1946 to February 28,1949. The amount sued for includes amounts to which it claims entitlement under its published refund policy and also amounts for laboratory fees. The action was filed in this court on May 27, 1953.
5. Public Law 16, 78th Congress, 57 Stat. 43, enacted March 24, 1943, as amended by Public Law 268, 79th Congress, December 28,1945, provided for vocational rehabilitation of disabled veterans without limitation as to cost for a 4-year period, or longer with approval. Section 2 thereof provided in pertinent part as follows:
2. The Administrator shall have the power and duty to prescribe and provide suitable training to persons included in paragraph I, and for such purposes may employ such additional personnel and experts as are deemed necessary, and may utilize and extend existing Veterans’ Administration facilities and utilize those of any other governmental agency as well as those maintained by Joint Federal and State contribution; and, in addition, he may, by agreement or contract with public or private institutions or establishments, provide for such additional training facilities as may be suitable and necessary to accomplish the purposes of this part.
*230 Approximately 10 percent of the total veteran enrollment of plaintiff’s school consisted of Public Law 16 trainees during the aforementioned period.
6. Public Law 846, 78th Congress, enacted June 22, 1944, provided for the training and education of nondisabled veterans and stated in pertinent part as follows:
2. Any such eligible person shall be entitled to education or training at an approved educational or training institution for a period of one year plus the time such person was in the active service on or after September 16,1940, * * * but in no event shall the total period of education or training exceed four years: * * *
*****
5. (a) The Administrator shall pay to the educational or training institution (including the institution offering institutional on-farm training), for each person enrolled in full time or part time course of education or training, the customary cost of tuition, and such laboratory, library, health, infirmary, and other similar fees as are customarily charged, * * * Provided,, That in no event shall such payments, with respect to any person, exceed $500 for an ordinary school year unless the veteran elects to have such customary charges paid in excess of such limitation, in which event there shall be charged against his period of eligibility the proportion of an ordinary school year which such excess bears to $500: * * * *****
Seo. 1500 {38 Ü. 8. O. 697). (a) * * * For the pur-Sose of carrying out any of the provisions of Public, 'umbered 2, as amended, and this Act, the Administrator shall have authority to accept uncompensated services, and to enter into contracts or agreements with private or public agencies, or persons, for necessary services, including personal services, as he may deem practicable.
7. Veterans’ Administration Instruction No. 3-A, issued by the Administrator of Veterans’ Affairs on May 29, 1945, dealt generally with the matter of authority to enter into a contract for courses of training under Public Law 16. Paragraph 1 of this instruction authorized managers of regional offices to enter into contracts with public or private educational institutions for providing courses of training to carry' out the purpose of Public Law 16. The instruction reads in part as follows:
*231 18. Varying charges for same course. Wlien an institution makes more than one charge for the same course, e. g., a monthly charge or a term charge and as an alternative a charge for the entire course, the manager will approve only the lowest published charge which is generally the cash price. Payment, of course, will continue to be made in arrears.
26. Charges differing from customary charges. If the charges are less than those made other students pursuing the same or comparable courses, the charges will be set forth in typewritten form in paragraph SECOND, and no change will be made in paragraph FIFTH.
$ $ * $ $
28. Proration of charges. In the event a veteran is withdrawn before the end of the period for which charges are made, it is desirable that the payment of the charges be prorated in accordance with the period of the veteran’s attendance. However, if an institution will not agree to such conditions, the charges may be prorated in accordance with the published refund policy of the institution, using phraseology somewhat as follows: “In accordance with the refund policy stated on pages _of the bulletin which is part of this contract.” * * *
8. Preliminary Basic Instructions dated July 1, 1944, issued by the Veterans’ Administrator pursuant to Public Law 346, provides in pertinent part as follows:
8. PAYMENTS TO TRAINEES AND EDUCATIONAL OR TRAINING INSTITUTIONS.
(B) The manager shall authorize payment to the educational or training institution for each person enrolled in a full-time or part-time course of education or training the established cost of tuition and such laboratory, library, health, infirmary and other similar fees as are customarily charged and may pay for books, supplies, Sment and other necessary expenses, exclusive of , lodging, other living expenses and travel as are generally required for the successful pursuit and completion of the course by other students in the institution, provided that in no event shall such payments with respect to any person exceed $500.00 for an ordinary school year and provided further that no payments shall be made to institutions, business or other establishments furnishing apprentice training on the job.
*232 (C) The effective date of payment to the veteran and the institution shall be the date the veteran commences training. For veterans who are now pursuing courses which are continued as training under this law, the effective date shall be the date, after the approval of this Act, the application or informal application is received at the regional office of the Veterans Administration or at the approved educational or training institution, if the application is forwarded promptly to the Veterans Administration.
(D) The effective date of discontinuance of payment to the veteran and the institution shall be the date the veteran completes his educational or training course or the veteran discontinues or is discontinued from his course of training, except that if the course ends during a month the subsistence allowance may be paid for that month.
i}: * # ❖ Jj<
10. GENERAL PROCEDURE
(A) ... If the veteran is found eligible, he will be given notification of the exact period of training to which he is entitled under the law and that he may now elect his course of training and select the approved institution. The veteran will also be informed that he may use that notification as evidence of his eligibility for training-under the law when contacting the institution which he has selected. When the veteran enters training, the institution will forward to the regional office which determined his eligibility the following papers: (a) A certified copy of the notification from the Veterans Administration establishing his eligibility; (b) a certified statement showing the date the veteran commenced training in the course refererd to in (c) ; (c) a certified statement showing (1) the name of the course, the length of the course, the length of the ordinary school year and whether course of training is full-time or part-time; (2) customary cost of tuition for an ordinary school year, laboratory, library, health, infirmary and other similar fees as are customarily charged, cost of books, supplies and equipment for an ordinary school year, other necessary expenses for an ordinary school year, itemized, as are generally required for the successful- pursuit and completion of the course by other students in the institution. Board, lodging and other living expenses and travel are not to be included.
(B) The veteran may file his application with the Veterans Administration through the approved educational or training institution which he has selected and *233 the institution may, if it is satisfied that the veteran meets the eligibility requirements, but subject to final approval by the Veterans Administration, enter him into training and promptly forward his application, together with all other necessary papers referred to above, to the regional office in the territory in which the institution is located. When these papers are received in the regional office, eligibility will be established and the veteran and the institution notified of the decision.
12. contracts. This law does not require the Veterans Administration to enter into contracts with an approved educational or training institution when the charges made by such institution for tuition, books and supplies are in accordance with the usual rates as published in catalogues or otherwise established. * * *
9. Service letters were issued by the Administrator of Veterans’ Affairs on October 24, 1944, December 7, 1944, and March 7,1945, covering the matter of payments to approved institutions for education or training under Public Law 346. The latter service letter reads in pertinent part as follows:
^ * ❖ *
(A) CHARGES EOR TUITION, LABORATORY, LIBRARY, HEALTH, INFIRMARY AND OTHER SIMILAR REES.
Pursuant to the authority contained in the Act, the Administrator hereby determines that the- charges established in accordance with, and pursuant to the limitations of, the following provisions are fair and reasonable for the purpose of enabling the institutions to give the services required by said Act and are within the intent and authority of paragraph 5, Title II, Public No. 346, 78th Congress.
(1) The charges for tuition, laboratory, library, health, infirmary and other similar fees customarily made and in effect prior to June 22, 1944, or as may be established after said date if applicable to all classes of students at the approved institution for any student who pursues the particular course of training, except that the charge for the tuition fee of a full-time veteran trainee shall be not less than $15.00 per month ($45.00 per quarter or $60.00 per semester), said rates shall be effective, as to those heretofore enrolled, from the beginning of the first term beginning after the date of this Service Letter, and as to those hereafter enrolled, from the date of enrollment, provided that the proper official certifies to the manager of the regional office *234 the charges customarily made to any student pursuing the particular course.
(8) Arrangements pursuant to paragraphs 1 and 2 do not require a formal contract with institutions and payments will be made at the end of each term, semester, or quarter prorated in the cases of veteran trainees who withdraw during the term on the same basis as for non-veteran students.
( C) MAXIMUM CHARGES ALLOWABLE FOR FULL-TIME AND PART-TIME INSTRUCTION.
(1) All provisions for payment above stated are subject to the provision of the law that such payments may not be paia in excess of $500 for an ordinary school year in respect to any person.
# ❖ ❖ * %
(7) Nothing in the preceding paragraphs shall be construed as preventing the payment of the regular charges made by an institution for its courses, so long as the stated máximums are not exceeded, nor as authorizing the payment of rates for part-time instruction that are higher than those authorized by the rates provided in section (A) of this Service letter.
iji Sfi Hi ❖ %
4. Managers of regional offices and facilities having regional office activities of the Veterans Administration are especially directed to send to each approved educational or training institution in your territory a copy of these instructions and to secure an acknowledgment from each such institution that the instruction has been received.
10. No contract was ever entered into between the plaintiff and the defendant concerning other than disabled veterans applicable to the plaintiff’s claims herein. To state it another way, during the period in suit there was no contract between the parties to this action covering Public Law 346 veteran students.
11. Beginning about September 1943, a contract was entered into between the plaintiff and the defendant, acting through the Veterans’ Administration, covering Public Law 16 veteran students. At that time there was only one veteran student attending plaintiff’s school. Thereafter, upon enactment of Public Law 346, the number of veterans receiving *235 training at tbe plaintiff’s school increased. Prior to 1946 the total enrollment was between 400 and 600. During 1947, the average enrollment was approximately 900. During 1948, it was about 1,000. Of the total enrollment, approximately 90 percent were veterans. Of the veterans enrolled, about 10 percent were Public Law 16 students and the remainder were Public Law 346 students.
12. For the period immediately preceding September 23, 1946, pursuant to a contract entered into covering Public Law 16 students, the contract rate paid for such students for both the art course and the photography course was $41.66 per 4-week period. Payments were made by the defendant on vouchers submitted to it by the plaintiff in that amount for each veteran. Although there was no contract covering Public Law 346 students, payment was made for their training at the same rate as for Public Law 16 students on vouchers submitted by the plaintiff at those rates.
13. At or about June 24, 1946, the plaintiff advanced its tuition rates for the summer term which ran from that date to September 13, 1946. For full time study its published catalog rate was $158 for the art course, payable in advance, or $55 payable each 4 weeks in advance. For the photography course the published catalog rate was $187, payable in advance, or $65 payable each 4 weeks in advance. Both of the above courses were of 12 weeks’ duration.
14. In July or August 1946, plaintiff advised the Veterans’ Administration Regional Office, Los Angeles, California, that commencing September 23, 1946, it was increasing its catalog rates to $51.87 per 4-week period for its part courses and $61.25 per 4-week period for its photography courses. These rates represented an increase for the art courses of 24% percent over the contract rate previously charged the Veterans’ Administration for Public Law 16 veterans and applied to Public Law 346 veterans. For the photography courses these new rates represented an increase of 47 percent over the contract rate previously charged the Veterans’ Administration for Public Law 16 veterans and applied to Public Law 346 veterans.
These new increased rates as aforesaid were submitted to Mr. David Slayton, the contract officer assigned to the nego *236 tiation of a contract with plaintiff for the training of Public Law 16 students, and referred by him to Mr. Charles Binder, chief of the training facilities section, and Mr. Raymond J. Royer, supervisor of the contract unit. These officials considered that inasmuch as the new proposed rates represented a radical increase over the rates previously charged by plaintiff and were considerably higher than the rates charged by similar institutions offering similar courses in the same locality, a lower and more reasonable rate should, if possible, be negotiated. This consideration was also prompted by the fact that the bulk of plaintiff’s enrollment consisted of veterans.
Accordingly, a conference was arranged in August of 1946 which was attended by Messrs. Binder, Royer and Slayton, representing the Veterans’ Administration, and Mr. Edward A. Adams, president, Mr. J. C. Chambers, secretary, and Miss Geraldine E. Foster, registrar, representing the Art Center School.
15. At the conference referred to above, the plaintiff’s representatives urged acceptance by the Veterans’ Administration of the increased catalog rates and the plaintiff’s representatives were asked, in effect, to justify the increase. The school was then asked to go over its costs and to allow an inspection of its records by Mr. Wittman of the staff of the Los Angeles Veterans’ Administration office. Although such inspection was made, there was no provision in Public Law 16, or any existing Veterans’ Administration instruction or regulations thereunder, which authorized a cost analysis of plaintiff’s operation. On the contrary, paragraphs 42 and 45 in Veterans’ Administration Manual M7-5, and various earlier service letters, instructions, rules, regulations, etc., specifically authorized increases in tuition, fees and charges, and required that contracts for courses of training under Public Law 16 provide for payment based on charges customarily made to other students. Other conferences ensued both at the Veterans’ Administration office and at the school, resulting in the submission by the plaintiff of a memorandum agreement of September 19, 1946, whereby the school agreed to accept for instruction during the period September 23, 1946 to September 19, 1947, veterans entitled *237 to vocational rehabilitation training under Public Law 16. It recited that the courses of instruction to be furnished and the charges therefor would be as per bulletins of the institution attached thereto, but the exhibit in evidence contains no attachment. There was, however, a document submitted to the contract division of the Veterans’ Administration by covering letter of September 17,1946, which did include the catalog rates of the plaintiff. See finding 23 for such catalog rates.
16. The plaintiff submitted a proposal dated September 17, 1946, for vocational rehabilitation training under Public Law 16, which incorporated as a part thereof by means of insert sheets the rates of $46.88 per 4 weeks of training for art courses and $55 per 4 weeks of training for photography courses. This proposal covered the period September 23, 1946 to May 16, 1947. The insert sheets carried a heading “Memorandum Agreement of September 19, 1946.”
The proposal was submitted by the school’s president, Mr. Adams, and was on December 4,1946, recommended for approval by Charles Binder, chief, training facilities section, and approved by B. F. Enyeart, chief, vocational rehabilitation and education division, Veterans’ Administration, Los Angeles, California. Upon approval by the two officials named above, this became the contract for the period September 23, 1946 to May 16, 1947, and carried the designation “Negotiated Contract” No. VA44r-vr-309.
17. During the conferences at which the rates later incorporated in the contract referred to above were negotiated, it was the understanding of the parties that the same rates would apply concerning Public Law 346 students despite the fact that no contract applied to such students. Accordingly the school submitted vouchers for both the Public Law 16 and the Public Law 346 students at the rates shown in contract No. 309 and subsequent contracts, and payment was made in the amount claimed.
18. Upon enrollment of each veteran student who received training at the school, the institution sent to the regional office of the Veterans’ Administration a statement of charges. In each case the same charges which were included in con *238 tract No. 309 as well as in later contracts were detailed for each, student.
19. Contract No. 309 covered the school year commencing September 23, 1946, and ending May 16, 1947. On April 9, 1947, shortly prior to the expiration of the aforementioned contract, plaintiff addressed the following letter to the Veterans’ Administration Eegional Office, Los Angeles:
Thank you for your letter of March 20th, concerning the renewal of our contract under the provisions of Public Law 16.
We do wish to renew the present contract, which expires on May 16, 1947. We also wish to request certain changes concerning the amounts allowed students for the purchase of expendable materials. These changes are necessary due to general increases in costs.
We shall be happy to discuss the renewal and the changes with you, at your convenience.
Accordingly, without further negotiation regarding tuition rates, contract No. VA44r-vr-427, hereinafter referred to as contract No. 427, covering the period from May 26,1947 to September 10, 1948, was executed incorporating the same basic tuition rates as were agreed upon in contract No. 309; nor was any dissatisfaction expressed by plaintiff before, during, or after the time of execution thereof.
20. On August 13,1948, approximately one month prior to the expiration of contract No. 427, plaintiff’s registrar addressed the following letter to the Veterans’ Administration Eegional Office:
Contract No. VA44r-vr-427, negotiated between your office and The Art Center School, expires on September 10, 1948.
This is to advise you that we wish to renew the contract and Supplement No. 1 with no changes except the following:
1. Increase in the allowance for permanent camera equipment from $240.00 to $260.00, in accordance with the joint decision recently reached in your office.
2. A re-instatement of the Laboratory Fee in the Photography Department, in the amount of $12.80 each 16-week semester. (This compares with the $17.50 charge which is the published fee for non-veteran students. You will recall that this subject was thoroughly discussed and the Laboratory Fee was eliminated at *239 your request when the current contract was drawn up.)
Will you be kind enough to direct your reply to this letter to the Secretary of the Board of Regents, Mr. J. C. Chambers, 5353 W. Third Street, Los Angeles 5, California.
Contract V-3044V-265, hereinafter referred to as contract No. 265, was thereupon entered into by the parties covering the period from September 20,1948 to September 9, 1949, following the expiration of contract No. 427. It incorporated the same tuition rates as were provided in contracts Nos. 309 and 427 without any discussion with respect thereto. In accordance with the request set forth in plaintiff’s letter of August 13, 1948, an increase in the allowance for permanent camera equipment from $240 to $260 was also provided for in Schedule II of the new contract. At the time of execution of contract No. 265 and prior thereto no dissatisfaction was expressed by any of plaintiff’s officials with respect to the tuition rates set forth therein, except as to the refund schedule hereafter discussed.
21. On October 11, 1949, one month after expiration of contract No. 265, and approximately 7 months after the end of the period involved in this litigation, Mr. Chambers, the secretary of the Art Center School, advised the Veterans’ Administration Regional Office of a willingness “to accept a continuation of contract at our old rate.” The “old rate” referred to was the tuition rate provided in the then recently-expired contract No. 265, which was the same as the rate incorporated in the preceding contracts Nos. 427 and 309. At that time, October 11, 1949, there was under discussion between the Veterans’ Administration Regional Office and plaintiff the matter of determination of tuition rates for veterans for the period following the expiration of contract No. 265 occasioned by Change 9 to Veterans’ Administration Manual M7-5 (14 Fed. Reg. 381, January 28, 1949), which regulation became effective March 1,1949, and accordingly is not pertinent to the period here in litigation.
22. The published catalog rates of plaintiff insofar as material herein during the periods pertinent to this suit were as follows:
*240 CALENDAR (A SCHOOL TEAR IS 32 WEEKS — TWO TERMS OF 16 WEEKS EACH)
Fall Term, 16 weeks, from Sept. 23, 1946 to Jan 24, 1947. _
_ Spring Term, 16 weeks, from Jan. 27, 1947 to May 16.1947.
Summer Term, 16 weeks, from June 2, 1947 to Sept. 19.1947.
VACATION
No charge is made for the two week Christmas vacation from December 20, 1946 to January 6, 1947. All legal holidays are observed.
ART DEPARTMENT TUITION
Full time study (5 days per week)
School year 32 weeks, $415 payable in advance (Saves 6%).
School term 16 weeks, $212.00 payable in advance (Saves 4%).
Monthly payment plan, $55.00 payable each four weeks in advance.
*****
PHOTOGRAPHT DEPARTMENT TUITION
Full time study (5 days per week)
School year 32 weeks, $490.00 payable in advance (Saves 6%).
School term 16 weeks, $250.00 payable in advance (Saves 4%).
Monthly payment plan, $65.00 payable each four weeks in advance.
*****
PHOTOGRAPHY DEPARTMENT FEES *****
Lab coat and towel service, per term, $7.00.
The published rates from the period September 22, 1947 to September 10,1948, were identical, except under “Photography Department Fees” the laboratory fee per term was $17.50. However, under the words “Art Department Tuition” and “Photography Department Tuition” the following appeared:
*241 (Fees and tuition for Veteran students covered by Veterans Administration.)
The calendar for the above-mentioned period is shown below:
CALENDAR (A SCHOOL TEAR IS 32 WEEKS-TWO TERMS OE 16 WEEKS EACH)
Fall Term, 16 weeks, from Sept. 22, 1947 to Jan. 23, 1948.
Spring Term, 16 weeks, from Jan. 26,1948 to May 14, 1948.
Summer Term, 16 weeks, from May 24,1948 to Sept. 10,1948.
No charge is made for the two week Christmas vacation from December 19,1947 to January 5,1948, nor for the two weeks between Spring and Summer Terms. All legal holidays are observed.
The published tuition rates for the period beginning January 24,1949, and ending January 20,1950, insofar as herein material, is shown below:
tuition RATES, CALENDAR (A SCHOOL TEAR IS 32 WEEKS— TWO TERMS OE 16 WEEKS EACH)
Spring Term, 16 weeks, From Jan. 24,1949, to May 13, 1949.
Summer Term, 16 weeks, From May 23,1949, to Sept. 9,1949.
Fall Term, 16 weeks, From Sept. 19, 1949, to Jan. 20, 1950'
TUITION SCHEDULE AND PATMENT PLANS
1. School Year — 32 weeks, Full Time Study, 5 day week (Saves 6%), $490.
2. School Term — 16 weeks, Full Time Study, 5 day week (Saves4%), $250.
3. Budget Payment Plan, Full Time Study, 5 day week (per Term), $260. (Equal payments $65, each 4 weeks in advance).
No charge is made for the two-week Christmas vacation from December 16,1949, to J anuary 2,1950, nor for the one week each before and after the Summer Term. All legal holidays are observed.
*242 FEES
* * * * *
Laboratory Fee (per Term), $17.50 i);
Veterans, Tuition and fees for Veteran students are covered by the Veterans Administration under Public Laws 16 and 346.
23. During the period involved in this suit all nonveteran students paid the published catalog rates.
24. At no time from September 23, 1946 to February 24, 1949, did plaintiff express dissatisfaction with the tuition rates agreed upon in the 3 contracts covering this period, and the charges set forth therein were also vouchered for by plaintiff and paid by the Veterans’ Administration for the training furnished to Public Law 346 students pursuant to the understanding between the parties. As each contract drew near its expiration date, it was plaintiff who requested a renewal thereof on essentially the same terms and conditions for the succeeding school year. Neither of plaintiff’s letters requesting renewal of the previous contract contained any inference that the rates of $46.88 per 4-week period for the are courses and $55 per 4-week period for the photography courses were in any way unacceptable to plaintiff. Contracts Nos. 427 and 265 for the training of Public Law 16 veterans were executed on the basis of specific offers from plaintiff to the Veterans’ Administration to train such veterans at the rates set forth in the prior contract, which rates were less than the rates charged nonveterans and were intended by the parties to apply to the training of Public Law 346 veterans.
During the time in question plaintiff did not submit vouchers for the training of either Public Law 16 or Public Law 346 students at rates in excess of the rates set forth in contracts Nos. 309,427, or 265, or otherwise request payment for the training of veterans at the same rate as was charged by plaintiff for the training of nonveterans.
25. In addition to the constructive notice of public laws and regulations given by publication in the Federal Eegister, plaintiff had actual notice of the statutory and regulatory provisions pertaining to the training of nondisabled veterans *243 pursuant to Public Law 346. Plaintiff’s officials were personally aware that no contract was required or necessary lor the training of veterans thereunder and that the only guide provided therein as to the rate to be paid for such training was the “customary cost of tuition and * * * as are customarily charged,” During the period herein concerned plaintiff willingly accepted the contract rate, which was lower than its “customary rate,” for the training of nondisabled veterans pursuant to Public Law 346, in accordance with the mutual understanding that existed between plaintiff’s representatives and the Veterans’ Administration officials that the rates negotiated and incorporated into contract No. 309 for the training of disabled veterans under Public Law 16 and renewal contracts Nos. 427 and 265, would be charged by plaintiff for the training of Public Law 346 veterans. This understanding resulted from the realization that plaintiff incurred no greater costs for the training of Public Law 16 veterans than for Public Law 346 veterans in that they in all cases attended classes together and pursued the same scholastic activities.
26. No pressure or coercion of any kind was exerted upon plaintiff to accept a rate lower than its “customary rate” for the training of veteran students and such acceptance was without protest from September 23, 1946 to February 28, 1949. The Public Law 16 tuition rates agreed upon and incorporated into contract No. 309 were arrived at as the result of amicable negotiation by plaintiff and the Veterans’ Administration dealing at arm’s length.
27. Under date of July 28,1947, the plaintiff filed with the Veterans’ Administration Begional Office a schedule which set forth under a heading “Tuition per Course for Veterans” aggregate school year charges in the art and photography courses which were equivalent to the rates per 4 weeks of training provided in the pertinent contracts and in the vouchers and statements of charges submitted by the petitioner during the period September 23,1946, through February 28, 1949. Another column, headed “Tuition per Billing Period,” contained the $55 and $46.88 rates specified in the aforementioned contracts, vouchers and statements. In a column headed “Tuition per Course for Civilians,” there *244 were set forth, rates of $415 per school year for each of the three art courses and $490 for photography. The listed “Civilians” rates were $50 and $40 more, respectively, than the “Veterans” rates. There is no notation or any other reference on the document which limited the listed “Veterans” rates to the rates in the then current contract No. 427, or to any restricted chronological period or class of veterans; and there is no indication of dissatisfaction or of a desire or a request for higher rates for veterans. The schedule and certain other data which accompanied it were responsive to a form letter of July 23,1947, from the Veterans’ Administration Eegional Office, which stated in part that the requested information was necessary for use by various divisions of the Veterans’ Administration Eegional Office and by the California State Department of Education, Division of Eead-justment Education; it further stated, “The material will also be used to compile a directory which will be available for guidance centers, veterans organizations and similar service groups.”
The schedule and accompanying data of July 28, 1947, were certified by the registrar of the Art Center School, as follows:
I hereby certify that the information given herein is coi’rect and complete to the best of my knowledge and belief, and is not to be construed as acceptable by the Veterans Administration until approved by the Division of Eeadjustment Education, State Department of Education.
On the same page as the registrar’s certification there appears the following text:
Any changes proposed or contemplated which would effect [sic] the data submitted herein, particularly such as adding courses, changing length of courses, charges and hours of attendance, must be submitted in writing to the Division of Eeadjustment Education, State Department of Education for prior approval, with copy to the Veterans Administration, Training Facilities Section, Los Angeles Eegional Office.
No payments to schools for services rendered, will be made by the Veterans Administration that are at variance with the information submitted herein, unless and until approval is granted by the Division of Eeadjust *245 ment Education, State Department of Education, 1121 South Hill Street, Los Angeles 15, nor will any subsistence be paid to the veteran trainee.
28. Generally, inasmuch as tuition fees are ordinarily paid by nonveteran students in advance for the whole semester, a refund is made to those students withdrawing from the school before the end of the semester. The extent to which such refund will be made in proportion to the fraction of the semester attended to the date of withdrawal is known as the “refund policy.”
29. The respective contracts in effect during the period herein concerned provided in pertinent part as follows with respect to “refund policy
Contract No. VA44r-vr-309, covering the period September 23,1946 through May 16,1947:
eighth. In the event that any veteran in training under this contract in this institution is withdrawn prior to the completion of the term or of his course, the charges made for tuition and other fees will be prorated as follows:
In accordance with the period of the veteran's attendance. [Emphasis supplied]
Contract No. VA44r-vr-427, covering the period May 26, 1947 through September 10,1948:
eighth. In the event that any veteran in training under this contract in this institution is withdrawn prior to the completion of the term or of his course, the charges made for tuition and other fees will be prorated as follows:
In accordance with the period of the veteran}s attendance. [Emphasis supplied]
Contract No. V3044V-265, covering the period September 20,1948 through September 9, 1949:
eighth. In the event that any veteran in training under this contract in this institution is withdrawn prior to the completion of the term or of his course, the charges made for tuition and other fees will be prorated as follows:
In accordance with the period of the veterans attendance, published information or custom of the institution, to the contrary, notwithstanding.
*246 It is further agreed by and between the Institution and the Veterans Administration that whenever a veteran interrupts or discontinues or notifies the Institution of his intention to interrupt or discontinue his course of education or training, the Institution shall notify the the Veterans Administration immediately upon knowledge of such action, in the form and manner prescribed by the Veterans Administration or on any paper which clearly identifies the Institution, the veteran (his name and C number) and gives the facts in the case, including the exact date of the veterans change in training status. It is further agreed that said notice is of the essence of this contract. [Emphasis supplied]
30. The plaintiff’s president testified that the school had a refund policy but he didn’t know how it worked. Its catalog published in 1941 and still in use at the beginning of the period here in litigation, as amended by the individual enrollment forms, contained the following provision:
tuition refunds or credit extensions can not be made for absence, dismissal or withdrawal. Exceptions: 1. Serious illness of 12 weeks or more, when a credit of one-half the unused balance, computed at the monthly rate, will be allowed. 2. Students entering military service will receive a full refund or credit extension for the total amount of unused tuition. Tuition rates are subject to change without notice.
The enrollment forms for the period September 23, 1946 to January 21, 1949, contained the following note:
I understand that no allowances, extensions or deductions will be made for withdrawal, dismissal or absence, except in case of serious illness covering a period of six or more consecutive weeks, in which case the unused balance is credited in full for my further use, or one-half the unused balance (computed at the four-week tuition rate) will be refunded. No allowances whatever will be made for absences or discontinuances that have not been reported as soon as possible.
The enrollment forms covering the period January 24,1949 to May 13,1949, contained the following provision :
_ eefund poliCy: In the event of the student’s discontinuance of attendance, by absence, dismissal by the School, or withdrawal by the student, The Art Center *247 School shall not be obliged to make any allowance, extension, deduction or refunds other than as shown in the table below.
refund schedule — Period of attendance from date of enrollment — Refund of tuition paid in advance and/or credit on tuition Budget Commitment.
Two weeks or less_ 80%
Between two and three weeks_ 60%
Between three and four weeks_ 40%
Between four and five weeks_ 20%
Over five weeks_No refund or credit
31. There is no direct evidence, apart from the information contained in the individual enrollment forms concerning the operation of a refund policy by the plaintiff.
By letter dated July 23,1947, the Veterans’ Administration Regional Office, for the purposes therein indicated, requested certain data in an enclosed form to be filled out by plaintiff which was entitled “Courses, Charges and Other Essential Data of Approved Schools.” On July 28, 1947, plaintiff filled out the form and returned it in compliance with the request of the Veterans’ Administration. Question 9 of the form was as follows:
Refund policy, if any, on tuition fees.
Plaintiff’s reply thereto in the blank adjacent to the question was:
None.
32. On April 1948, the plaintiff wrote the following letter to the regional office to the attention of Mr. Binder:
This letter is to request your approval of our use of the refund system set forth in Paragraph No. 136, Sub-Paragraph “e”, of the Veterans Administration Manual No. M7-5.
As you know, The Art Center School is a non-profit corporation of collegiate level, operating on a semesterly basis. Since its founding, it has been a policy of the School that students must enter at the beginning of the semester. The final entrance date permitted is two weeks after the starting day of the semester. _
_ Non-veteran students who enroll are financially obligated for the full sixteen-week semester.
Work given in both the Art and Photography Departments of this institution is planned on a semesterly basis. *248 Therefore, it is not possible to accept new students to fill the places of those who discontinue or interrupt their training more than two weeks after the semester has begun.
Total enrollment in the Art Department on September 22, 1947 (the beginning of the fall semester), was 516 and on January 23, 1948 (the end of the fall semester) , was 506.
Total enrollment in the Photography Department on September 22, 1947 was 326 and on January 23, 1948, was 290.
This * * * more than 5% of the students in School discontinued at a time when it was not possible [for] new people to take their places.
We are enclosing copies of our current enrollment contracts and have marked the clause concerning the withdrawal from School. With your permission, we shall adopt the refund policy described in Manual No. M7-5 for Public Law 16 and Public Law 346 students, as well as non-veteran students, and have our printed matter changed accordingly.
_ Your consideration of this matter and your early advice will be appreciated.
33. Apparently the plaintiff wrote to the regional office at Los Angeles concerning its refund policy on September 18, 1948, but the letter is not in evidence. On November 4, 1948, Mr. Enyeart, chief, vocational rehabilitation and education division of that office, sent the following letter to the plaintiff:
Deference is made to your letter dated September 18, 1948 concerning the adoption by the Art Center School of the refund schedule prescribed in Manual M7-5.
Determination as to adoption of this refund schedule has been made after considerable investigation by this office and opinion from our Branch and Central Office. It has been administratively determined by the management that the Art Center School cannot adopt, for the purpose of veteran-trainees, the refund schedule as set forth in VA Manual M7-5, and that the proration of charges for those veteran-trainees enrolled will be paid in accordance with the period of the veteran-trainee’s attendance.
34. On January 20, 1949, the school sent a letter to the regional office to the attention of Mr. Enyeart advising him *249 of the filing of an appeal (which was enclosed) on the action taken in denying the plaintiff the right to a refund policy. The letter also requested Mr. Enyeart’s continuing cooperation in seeing that the appeal would be directed to the proper channels for consideration.
The plaintiff on the next day, in the letter transmitting contract No. 265 properly signed on behalf of the school to the regional office of Veterans’ Administration, included the following reservation concerning refund policy in such letter:
Please be advised that this document is being signed and forwarded to you with the reservation that we have prepared an appeal to a previous administrative ruling made by your office which did not permit our utilization of refund policy provided for under VA regulations, and that if, as, and when our appeal is acted upon favorably, it is our understanding that this Contract will be revised retroactive to September 20, 1948 to include such benefits as the School may derive from the allowance of the refund policy.
The record does not show what action, if any, was taken on the administrative appeal referred to above.
35. The plaintiff in 1950 applied for and was granted a review by the Veterans’ Education Appeals Board concerning a later contract covering a period after the period in suit in this court. In its final decision of July 17, 1953, Docket No. 18, the Veterans’ Education Appeals Board found that plaintiff was entitled to its “customary cost of tuition.”
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover the difference between its customary rate and the rate paid under the contracts, from May 27,1947 to February 28,1949, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to rule 38 (c) of the Buies of this Court.
It is further concluded that plaintiff is not entitled to recover on its third cause of action, and said cause of action is dismissed.