Lester C. GERBER

v.

The UNITED STATES.

No. 534-80C.

United States Claims Court.

April 20, 1983.

---

Lester C. Gerber, pro se.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

OPINION

YOCK, Judge:

In this military pay case, plaintiff, Lester C. Gerber, instituted this action *pro se* seeking a change in his military discharge status from general under honorable conditions to a medical disability discharge, and compensation that would flow therefrom.

Plaintiff moved for summary judgment and defendant filed a cross-motion for summary judgment. For the reasons discussed herein, the defendant's cross-motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the case is to be dismissed.

*Background Facts*

Plaintiff enlisted in the Air Force at the age of 19 on January 21, 1947, and was honorably discharged on September 22, 1949. Plaintiff thereafter tried to reenlist but was rejected on December 13, 1949, for failure to pass the Air Force aptitude test. On March 2, 1950, plaintiff was able to enlist in the Air Force and was honorably discharged on November 12, 1953. Plaintiff reenlisted on November 13, 1953, and was honorably discharged on December 12, 1957, having attained the grade of staff sergeant. On December 13, 1957, plaintiff reenlisted for a term of six years. However, on December 28, 1959, plaintiff was tried by special court-martial convened at Lincoln Air Force Base, Nebraska. Plaintiff was charged with violating Article 86 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. This charge contained five specifications of failure to go to his appoint-

ed place of duty. Plaintiff was also charged with violating Article 92 of the UCMJ, 10 U.S.C. § 892. This charge contained one specification of failure to obey a lawful order. Plaintiff entered a plea of not guilty to all charges and specifications, except for two of the specifications of failure to go to his appointed place of duty to which plaintiff entered a plea of guilty. Plaintiff was found guilty of all charges and specifications and sentenced to a bad conduct discharge, forfeiture of $70 per month for six months, confinement at hard labor for six months and reduction in grade to airman basic. The military convening authority reduced the duration of the forfeiture and the confinement to three months each but otherwise approved the sentence. The officer exercising general court-martial jurisdiction approved the findings and sentence as modified by the convening authority except for disapproving one of the guilty findings of a failure to go specification. On May 25, 1960, the Air Force Board of Review affirmed the findings and sentence.

Subsequent to the court-martial, a clemency investigation was conducted and arrangements were made for a medical evaluation, to have the mental and physical condition of the accused determined. As a part of the medical evaluation conducted after the court-martial and before sentencing, a conference was held consisting of the presenting physician, the psychiatric staff, the members of the medical board, and social workers from the hospital staff and the U.S. Disciplinary Barracks. There was unanimous agreement among the conference members that plaintiff suffered no recognizable emotional illness and that he suffered no physical impairment other than the oral bleeding resulting from gingivitis.

The results of the medical and psychiatric evaluations conducted in April of 1960 reveal that there was no organic disease found upon thorough workup of plaintiff's complaint of chest pain and dizziness; and that the clinical impression was psycho-physiologic musculo-skeletal reaction and cardio-pulmonary reaction manifested by hyper-ventilization and anterior chest pain.

The psychiatric summary concluded that there was no evidence of a major mental illness, nor evidence of organic brain disease. The Board also noted the predominant use of such regulatory devices as hyper-repression, hyper-suppression, hyper-emotionalism, and displacement. The psychiatric syndrome was acute situational maladjustment. The Medical Board report of April 12, 1960 found plaintiff physically fit for duty and qualified for general military service.

Plaintiff received a separation physical on July 11, 1960, wherein the summary of defects and diagnosis were recorded as one defect, that of severe hemorrhagic gingivitis. Plaintiff was pronounced fit for duty. On July 25, 1960, plaintiff was discharged with a bad conduct discharge.

Plaintiff filed an application with the Air Force Discharge Review Board (AFDRB) dated October 18, 1961, for review of his discharge, to have it changed from a bad conduct discharge to an honorable discharge. Plaintiff alleged that: his court-martial records were unjust and contradictory; his constitutional rights had been violated; and that his court-martial had resulted from a personal grudge of the commanding officer. On February 12, 1962, following a hearing before the Air Force Discharge Review Board at which plaintiff, who was represented by counsel, appeared and testified, plaintiff was informed that his bad conduct discharge had been changed to a general discharge under honorable conditions.

Plaintiff first applied for VA disability benefits on October 26, 1974, by filing a claim for a nervous condition. The VA rating decision of April 18, 1975, determined that the nervous condition was a constitutional or developmental abnormality under the law. Plaintiff filed a notice of disagreement, and upon review, the VA announced on July 16, 1975, that entitlement to service connected disability for a nervous condition had not been established.

On April 18, 1975, plaintiff amended his appeal to the VA to request a service-con-

nected disability rating for cirrhosis of the liver. Plaintiff was rated as nonservice connected: 30 percent Laennec's cirrhosis with anicteric hepatitis; 10 percent diabetes mellitus; 0 percent hypertension; 0 percent situational maladjustment history, resulting in a combined percentage rating of 40 percent nonservice connected.

The VA later (April 18, 1978) upgraded the 40 percent rating to a 50 percent non-service connected rating, and also determined that plaintiff's ailments did not meet the minimum schedule requirements for pension purposes.

On December 4, 1974, plaintiff filed his first of several applications with the Air Force Board for the Correction of Military Records (AFBCMR). In this application, plaintiff requested that his general discharge from the service be changed to a medical discharge with a reinstatement of rank and service. In that application, plaintiff indicated that he had been unjustly court-martialed during the time he was ill.

The AFBCMR requested a review of the plaintiff's service record by the Office of the Judge Advocate General for the Air Force and its recommendations. The Chief of the Military Justice Division of that office by memorandum dated March 16, 1976, recommended that there be no change in this general discharge status, since a review of the records indicated no illness at the time of trial that would cause anyone to question his competence to stand trial. The memo concluded that the plaintiff's application, relating specifically to the offense for which he was convicted, be denied. However, to the extent the plaintiff's application requested a medical discharge, the file was to be forwarded to the Office of the Surgeon General of the Air Force for its evaluation and recommendations.

The Chief of the Medical Standard Division of the Surgeon General's Office responded by memo of March 24, 1976, to the Board in pertinent part:

2. There is no basis for any sort of medical discharge. The applicant was thoroughly evaluated medically and psychiat-

rically with specific attention to his competency and fitness for trial. He was determined to be medically qualified and fit for military duty. There is no evidence of error or injustice.

3. The occurrance [sic] of disease states years after discharge is noted, but these cannot be connected to his period of service. They clearly were not and cannot be causes for a retroactive medical separation since the record clearly shows the applicant to have been medically qualified for duty.

4. It is recommended that the application be denied in so far as it requests a medical discharge.

Based on these recommendations and a review of the plaintiff's service records, the AFBCMR denied the plaintiff's application by letter dated October 6, 1976.

On February 10, 1977, plaintiff filed his second application with the Board requesting reconsideration of its October 6, 1976 decision and again alleging that he should have been medically retired for physical condition while on active duty. The Board dismissed this application by letter of November 23, 1977 stating that it contained no newly discovered relevant evidence for consideration. Plaintiff filed a similar application in 1979 with a similar result.

Thereafter on September 29, 1980, the plaintiff filed the present action in the U.S. Court of Claims.

Finally, on April 2, 1981, the plaintiff filed a further application with the AFBCMR requesting that his general discharge be upgraded to honorable or medical, that he be promoted to M/Sgt, and that his court-martial be changed or dismissed. After a lengthy and detailed review of the plaintiff's entire record background, the Board again denied his application by letter of May 3, 1982.

On May 25, 1982, plaintiff filed his motion for summary judgment in this case.

*Discussion*

Although the plaintiff's pleadings in this case have not been a model of clarity, the

court views the essence of this plaintiff *pro se*'s claim as a request for a change in his military discharge status from general under honorable conditions to a medical disability discharge with appropriate compensation that would flow therefrom. Plaintiff is apparently alleging that he should have been granted a medical disability discharge in 1960 based on an existing service-connected medical disability (hepatitis), instead of being given a bad conduct discharge in a court-martial proceeding at that time. Plaintiff also appears to be alleging defendant's negligence in failing to discover, record, and treat plaintiff's hepatitis properly during his active duty service time. For that negligence, the plaintiff alleges that he should be awarded $1,000,000 for suffering and aggravation.[1]

Defendant alleges that plaintiff's claim should be disallowed because the claim was barred by both the statute of limitations and the doctrine of laches. In addition, even if the Court were to review the claim on its merits, the defendant asserts that the claim should be denied because the Board decision is not arbitrary and capricious, is supported by substantial evidence and is in accordance with the law and regulations.

As earlier indicated, this Court agrees with the defendant.

### A. Statute of Limitations

1. Plaintiff's Claim for Back Pay Due to an Alleged Improper Military Discharge.

■ To the extent that the plaintiff is claiming that his military discharge was invalid, that he should have never been discharged through a court-martial proceeding, but should have been allowed to continue his military career, plaintiff's claim is clearly barred by the Court's six-year statute of limitations, 28 U.S.C. § 2501 (1976).

The statute of limitations has long been strictly adhered to in military pay cases by the Court of Claims. In *Winfree v. United States*, 125 Ct.Cl. 853, 113 F.Supp. 676 (1953), the Court refused to consider a case filed six years and four months after plaintiff's effective retirement date because it was barred by the expiration of the statute of limitations. 28 U.S.C. § 2501 (Supp. IV 1946).

The Court's strict adherence to this statute is based on the following reasoning:

> Our statute of limitations is jurisdictional and must be strictly construed to avoid prosecution of stale claims which defendant can be prejudiced in contesting because excessive lapse of time dulls memories, accounts for missing witnesses, and occasions periodic, routine destruction of Government records.

*Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *see also Crown Coat Front Co. v. United States*, 386 U.S. 503, 517, 87 S.Ct. 1177, 1185, 18 L.Ed.2d 256 (1967); *Feldman v. United States*, 149 Ct.Cl. 22, 32, 181 F.Supp. 393, 400 (1960); *Dawnic Steamship Corp. v. United States*, 90 Ct.Cl. 537, 579 (1940).

In the present case, the military pay claim arose over 20 years ago and the statute of limitations has long since expired. As the Court held in *Zoesch v. United States*, 226 Ct.Cl. 557, 650 F.2d 291 (1980), military pay claims are not continuous and the claim arises from the date of the incident of separation from the service. The Court has allowed for "continuing claims" under certain circumstances where a favorable determination by a Correction Board (or comparable military tribunal) stops short of giving the full relief it was compelled in law to grant on the presentation made. *See DeBow v. United States*, 193 Ct.Cl. 499, 503, 434 F.2d 1333, 1335 (1970), *cert. denied*, 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1971). *See also, Eurell v. United States*, 215 Ct.Cl. 273, 276, 566 F.2d 1146

---

1. To the extent that the plaintiff is alleging a claim of negligence, such a claim sounds in tort and is not within the jurisdiction of the Court. 28 U.S.C. § 1491 (1976). The Court, and its predecessor, has consistently recognized this statutory limitation upon its jurisdiction. *See,* e.g., *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 752, 508 F.2d 817 (1974); *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 1241 (1970); *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967).

(1977). In the present case, the AFDRB decision to upgrade the discharge was made on February 12, 1962. Thus, the accrual of the claim could or may be continued up until that point. In any event, the statute of limitations expired over 12 years ago.

■ Furthermore, the plaintiff's pursuit of his claim before the AFBCMR 14 years after his discharge, July 25, 1960, from the Air Force, in no way tolls the statute. It is well settled law that post-discharge proceedings before administrative review boards are permissive in nature and do not serve to toll the statute of limitations. *Kirby v. United States, supra,* 201 Ct.Cl. at 531.

2. Plaintiff's Disability Retirement Claim

■ Plaintiff's disability retirement claim is also barred by the statute of limitations. Plaintiff admits knowledge of his illness in 1960 at time of discharge, yet he does not apply to AFBCMR until 1974 and does not bring suit before this Court until 1980, 20 years after discharge. This 20-year period is too long for this claim to be considered and plaintiff presents no viable legal justification.

Plaintiff appears to claim that the statute of limitations should be waived for a variety of reasons, all presented without much clarity or legal justification.

Plaintiff seems to be asking for waiver of the statute of limitations due to defendant's negligence or inadequate notice of the possible progression of a latent disability condition. However, plaintiff acknowledges in his complaint that he was treated for hepatitis during his term of enlistment. Ignorance of the severity of illness does not qualify as an excuse to waive the limitations as plaintiff was aware of the existence of the illness.

> Plaintiff must either show that defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was "inherently unknowable" at the accrual date.

*Japanese War Notes Claimants Assn. v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 359, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461, *reh'g denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1967). Plaintiff admitted that he was aware of the existence of the disease at discharge.

Plaintiff also seeks a waiver of the statute of limitations because he claims he was misinformed and misled into not seeking further legal remedies. Plaintiff does not provide any basis for this claim, and even if plaintiff did substantiate this claim, "[i]gnorance of rights which should be known is not enough." *Japanese War Notes Claimants Assn., supra,* 178 Ct.Cl. at 634, 373 F.2d at 359. *Art Center School v. United States,* 136 Ct.Cl. 218, 227, 142 F.Supp. 916, 921 (1956); *Thomas v. United States,* 125 Ct.Cl. 76, 80 (1953).

In complete contradiction to the previous two arguments, plaintiff evidently alleges that he needed the extra years to complete the investigation of his claim. However, there is no legal authority to toll the statute of limitations for factual investigation.

While it is not the duty of the Court to build and embellish the arguments of the involved litigants, the lack of clarity and legal authority of plaintiff's *pro se* presentation leads the Court, in the present case, to examine two more viable reasons, not offered by the plaintiff, for allowing such a claim 20 years after discharge.

First, plaintiff might have claimed that his illness constituted a legal disability. However, the plaintiff's alleged disability does not qualify as legal disability. Furthermore, even assuming that plaintiff had structured a successful argument that it was a legal disability, plaintiff's suit is still untimely, as it was more than three years after plaintiff's review by the AFBCMR before he brought to bar this present suit. The legal disability provision of 28 U.S.C. § 2501 provides in pertinent part:

> A petition on the claim of a person under legal disability * * * at the time the claim accrues may be filed within three years after the disability ceases.

In the present case, plaintiff's alleged disability does not qualify as a legal disability. In the 1940 version of section 2501, "a

person under legal disability" was defined as "idiots, lunatics, insane persons." The idea expressly being that the statute would be tolled for those who, because of a mental or physical disability, would not be able or competent to bring suit. Plaintiff's medical disability in no way affected his ability to bring suit, as evidenced by his application to the AFDRB in 1961.

In determining what is a legal disability, this Court has favored a functional approach declaring that a "disability" under section 2501 is one which in some way impairs the claimant's access to the Court. *Bowman v. United States,* 224 Ct.Cl. 640, 650 F.2d 287 (1980); *Goewey v. United States,* 222 Ct.Cl. 104, 612 F.2d 539 (1979); *Capoeman v. United States,* 194 Ct.Cl. 664, 440 F.2d 1002 (1971). In *Goewey,* the specific showing necessary to qualify as a disability within the meaning of section 2501 was described as follows:

[The condition] must in some way prevent his comprehension of his legal rights to military disability retirement pay, the necessity of prosecuting them by timely suit, and/or cause him to deliberately forego the filing of a timely suit to vindicate his rights.

222 Ct.Cl. at 114, 612 F.2d at 545.

Any legal disability ceased upon a demonstration by plaintiff of his understanding of his legal rights and responsibilities. *Warner v. United States,* 225 Ct.Cl. 719 (1980); *Goewey v. United States,* 222 Ct.Cl. 104, 114, 612 F.2d 539, 544 (1979). Plaintiff demonstrated his competence and his understanding of his legal rights by his application for a review by the AFDRB of his discharge status on October 18, 1961. Plaintiff also applied to the AFBCMR on December 4, 1974. Even if the Court were to assume that plaintiff suffered a legal disability up until the time of either of these two suits, which it does not, the three-year limitation in each example elapsed before plaintiff brought this present suit on September 29, 1980.

Plaintiff's strongest argument, which he also fails to bring forth, is that the statute of limitations in disability retirement cases

does not begin to run until a wrongful action by a qualified correction board has been taken.

The Court has held in disability retirement pay cases that no cause of action accrues until there has been an administrative determination of a claimant's right to physical disability retirement. *Dzialo v. United States,* 230 Ct.Cl. ——, 677 F.2d 873 (1982); *Friedman v. United States,* 159 Ct.Cl. 1, 13, 310 F.2d 381, 389 (1962), *cert. denied sub. nom., Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963).

However, as the Court stated in *Friedman:*

One of the prime objectives of the statute of limitations is to prevent factual issues from being tried too long after the events occurred—with witnesses dead or gone, records lost or destroyed, and memories confused or dimmed—at a time when the past cannot be reconstructed with any pretense of accuracy.

*Friedman, supra,* 159 Ct.Cl. at 34, 310 F.2d at 401.

The Court of Claims also has discussed, in a disability retirement case, the purpose of statutes of limitations:

The Supreme Court has said that statutes of limitations are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Railroad Telegraphers v. Ry Express Agency,* 321 U.S. 342, 348–49 [64 S.Ct. 582, 586, 88 L.Ed. 788] (1944). They are "founded upon the general experience of mankind that claims, which are valid, are not usually allowed to remain neglected." *Riddlesbarger v. Hartford Insurance Co.,* 74 U.S. (7 Wall. 386, 390 [19 L.Ed. 257] (1868)).

*Miller v. United States,* 175 Ct.Cl. 871, 879, 361 F.2d 245, 250 (1966).

In formulating the rules regarding the accrual of the cause of action in disability retirement cases, the Court has had to strike a difficult balance between giving a

plaintiff adequate time to bring suit and to protect his rights in court and being:

[F]air to the Government in that they [the rules] follow established general principles and Congressional legislation, and would not normally allow too great a time to elapse between suit and the facts on which the claim is predicated.

*Friedman, supra,* 159 Ct.Cl. at 36, 310 F.2d at 402.

The *Friedman* decision meticulously describes the difficulties in maintaining the judicial balance between the interests of the plaintiff and Government. The concern for the plaintiff is not to allow late-discovered claims to be cut off by limitations and it is this interest which is to be protected by not having claims accrue until proper Board determinations. However, "those servicemen who were sufficiently alerted to the possible existence of disability to ask for or appear before a Retiring Board will properly be cut off six years from that time * *." *Friedman, supra,* 159 Ct.Cl. at 35, 310 F.2d at 402. The purpose of that is to keep stale and forgotten claims from being brought against the Government. An old claim is too difficult to properly defend as evidence, records, witnesses and memories have a tendency to disappear. Thus, it would seem that a plaintiff who is properly alerted to his disability would not be allowed to let his claim go 20 years before bringing it to the Court's attention. Such an unjustifiable delay is prejudicial to the defendant.

Although plaintiff did not request a Medical Board, he was accorded one by the Air Force after his request for clemency and before his sentencing after the court-martial. Plaintiff underwent extensive medical and psychiatric examinations in April 1960 to determine his fitness for duty and ability to stand trial. The Medical Board determined that plaintiff was fit for general military duty, making clear to the plaintiff the Air Force's adverse position with regard to a disability retirement claim. Plaintiff did not apply to the AFBCMR until 1974, even though he was aware of his illness and the Air Force's adverse position, and he was fully capable of pursuing his

claim as evidenced by his application to the Air Force Discharge Review Board (AFDRB) in 1961.

Thus plaintiff, admittedly on notice of a possible disability, waited 13 years to bring forth this claim before a proper board. This is not the class of individuals the Court intended to protect under the standards of the *Friedman* case. The balance that the Court takes great care in preserving is between "veterans * * * who did not know they were ill or did not appreciate the progressive or serious character of their disease or disability * * *," *Friedman, supra,* 159 Ct.Cl. at 34, 310 F.2d at 402, and being fair to the Government in not allowing too great a time to elapse. Accordingly, plaintiff should not have waited 20 years to bring this suit. The statute of limitation now precludes this action.

### B. *Doctrine of Laches*

Independent of this Court's decision on the statute of limitations issue, plaintiff's claim would also be barred by the doctrine of laches. In view of plaintiff's previous unfavorable application to the AFBCMR in 1974, plaintiff waited too long to bring this suit in 1980. Laches is a fairness doctrine by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim. *Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975).

The elements of laches are inexcusable delay by the plaintiff in bringing suit coupled with prejudice to the defendant as a result of the delay. *Albright v. United States,* 161 Ct.Cl. 356, 362 (1963). Both of these elements are present here as plaintiff offers no persuasive reason not to apply laches to the present suit, which was brought over 4 years after the AFBCMR decision, and 18 years after the AFDRB decision.

### C. *The AFBCMR Decision is Supported by Substantial Evidence*

Even if this Court decided not to apply either the statute of limitations or the

laches doctrine, defendant would still be entitled to summary judgment.

Out of an abundance of caution, this entire file has been exhaustively reviewed and this Court finds no grounds to disagree with the concerted opinions of the numerous boards that previously considered this matter. First, a clemency investigation was conducted with a complete medical evaluation. Second, this matter was brought before the AFDRB. Third, the plaintiff applied to the VA for a review of the discharge. Fourth, plaintiff filed several unsuccessful applications with the AFBCMR. Thus, it is held that the AFBCMR decision is in accordance with the law and regulations and should be upheld.[2]

On December 4, 1974, plaintiff petitioned the AFBCMR to correct his discharge records from a general discharge to a medical discharge. The Office of the Surgeon General found no basis to change his records to reflect a medical disability discharge.

This Court has held repeatedly that it will not overturn a decision of a correction board without cogent and clearly convincing proof that the decision was arbitrary, capricious or unlawful. *DeCicco v. United States,* 230 Ct.Cl. ——, 677 F.2d 66 (1982); *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Dorl v. United States,* 200 Ct.Cl. 626, 633, *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973); *Wood v. United States,* 176 Ct.Cl. 737, 743 (1966).

In *Grieg v. United States,* 226 Ct.Cl. 258, 266, 640 F.2d 1261, 1266 (1981), the Court outlined its role in an analogous situation, reaffirming the standard of review enunciated in *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979). The Court said in *Sanders:*

> Once a plaintiff has sought relief from the Correction Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

In the case at bar, plaintiff has failed to meet his burden of proof. Plaintiff states that the decision of the AFBCMR was arbitrary, capricious, and in error, yet in no way does he substantiate these claims. Simple allegations are not sufficient. In order for the plaintiff to prevail, he must prove with specificity that the Board decision is arbitrary, capricious and unsupported by substantial evidence. *Dorl v. United States, supra,* 200 Ct.Cl. at 633.

Although it is possible for this Court to overrule a decision of the Board, cases are legion in the holding that such action will not be taken unless the action of the board was arbitrary, capricious, or unlawful. *Muldonian v. United States,* 193 Ct.Cl. 99, 105, 432 F.2d 443, 446 (1970). There is absolutely no evidence that the AFBCMR contains any of the above mentioned characteristics, as it is supported by extensive military records and is in agreement with

2. While the AFBCMR decisions may be overturned by this Court, it has long been held that Veterans' Administration (VA) decisions are not reviewable by any Court. 38 U.S.C. § 211(a) (1976) states in pertinent part:

[T]he decisions of the Administrator on any question of law or fact under any law administered by Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

Plaintiff claims that the VA Board decision was incorrect and the United States Claims Court should grant him relief. However, as 38 U.S.C. § 211(a) (1976) points out, the courts have no right to review VA Board decisions. As the Court stated in *Brown v. United States,* 150 Ct.Cl. 836, 840 (1960):

This Court and other courts have consistently held that the courts have no jurisdiction to award or review the denial of veterans' benefits in view of the above statutory restriction. *See also Torti v. United States,* 135 Ct.Cl. 214, 221 (1956); *Holliday v. United States,* 114 Ct.Cl. 702, 703, 87 F.Supp. 367 (1949); and other cases cited therein.

numerous other administrative board evaluations. It is not the duty of this Court to supplant such consistent evaluations simply because claimant disagrees with the Board's decision. Therefore, in the present case, the AFBCMR decision should not be overturned. There is simply no evidence in the record of this case that would lead this Court to conclude that the plaintiff is entitled to a disability discharge.

Thus, independent of the Court decision in the present case to apply the statute of limitations and laches doctrines, defendant's cross-motion for summary judgment would also be granted on the grounds that the previous AFBCMR decision should be left unchanged.

### Conclusion

Therefore, for the above-stated reasons, plaintiff's motion for summary judgment is denied, the defendant's cross-motion for summary judgment is granted, and the complaint is to be dismissed.