Demetrius G. **STAMPADOS**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 417–84C.

United States Claims Court.

Sept. 13, 1985.

tablished.

---

4. Nothing herein, however, indicates that any duty allegedly owed by defendant has been es-

Maurice S. Meyer, Washington, D.C., for plaintiff; Freedman, Levy, Kroll & Simonds, Washington, D.C., of counsel.

John S. Groat and Joan M. Blumberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MAYER, Judge.

Plaintiff seeks review of a 1983 decision of the Air Force Board for the Correction of Military Records which declined to change his records to show he was suffering from a service-induced disability, psychoneurosis, when he resigned from the Air Force in lieu of court-martial in October of 1953. He alleged he developed this long-term mental illness during his military service and believes he is entitled to disability retirement benefits. The case is before the court on the parties' cross-motions for summary judgment. The court concurs in their agreement that no material facts are in dispute and disposition by summary judgment is appropriate.

### Background

From 1943 to 1953, plaintiff had a distinguished military career, marked by rapid promotions. By 1953, he was a temporary colonel (permanent major), serving as Deputy Wing Commander at Stead Air Force Base, Reno, Nevada. A description of his service is found in *Stampados v. United States*, 150 Ct.Cl. 408 (1960).

In early 1953 he was made the project officer for a joint project with the Reno Chamber of Commerce to hold a stock car race to raise money for the base welfare fund. The fund had no money available for preliminary expenses, and at plaintiff's suggestion the Chamber of Commerce loaned four thousand dollars for this purpose. It turned the money over to plaintiff. Plaintiff, however, did not give the money to the race committee or report it to anyone connected with the project. By September 1953, his commanding officer learned of the loan and ordered him to return the funds. When plaintiff did not comply, he was relieved of duty and an inspector general investigation was initiated. The investigation concluded that plaintiff had misappropriated the funds, some twenty-five hundred dollars of which had been used to repay a personal debt.

As a result of these findings, on September 17, 1953, plaintiff was ordered to the hospital at Travis Air Force Base, California, for evaluation of his mental condition and any necessary treatment in accordance with policy in these circumstances. For

approximately two weeks, he was examined by psychiatrists and other mental health professionals. They concluded that he was suffering from a reactive hysterical depression, which was expected to improve with simple psychotherapy. However, it was recommended that he not return to duty until he had time to recover. After showing improvement from his hospitalization, plaintiff appeared before a medical disposition board on September 30, 1953, that found "no evidence of psychosis or psychiatric illness," and that he was "mentally competent to appear before any administrative board."

On October 1, 1953, plaintiff tendered his resignation for the good of the service under conditions other than honorable. He was discharged from the hospital the next day. Doctor's notes upon his release indicated he was "entirely well and normal" and "happy over his future plans." His resignation was accepted on the terms proposed, and he was discharged on October 15, 1953.

In the years intervening since he left the Air Force, a series of attempts has been made to obtain relief from plaintiff's discharge and its consequences. First, his wife petitioned the Air Force Board for the Correction of Military Records to set aside the discharge because he was insane when he submitted his resignation. After a hearing, in which plaintiff was represented by counsel, and which included the examination of witnesses and a review of his military and medical records, the Board in 1955 concluded he was sane and denied the request. Plaintiff challenged the Board's decision in the Court of Claims, which upheld it. *Stampados*, 150 Ct.Cl. 408.

Next, on April 24, 1961, plaintiff applied to the Air Force Discharge Review Board to have his discharge upgraded to honorable, but this request too was denied. On January 30, 1962, a second application to review the discharge and to give him an opportunity to appear before a "Psychological Evaluation Board" was submitted to that Board. Rehearing was denied.

Plaintiff again applied to the Board for the Correction of Military Records on March 25, 1963. This time he sought to have his discharge revoked and to be returned to active duty because his medical evaluation was improperly conducted and his constitutional rights violated. The Board held a hearing, and plaintiff appeared. He explained that his actions leading to the 1953 discharge resulted from poor judgment caused by extreme mental and physical fatigue. The Board did not grant the relief requested, but it did upgrade his discharge. The Board said it did not condone his misappropriation of the funds but, because this was the only blemish on his record, it mitigated the penalty.

Almost two years later, on January 30, 1966, plaintiff again applied to the Correction Board. He now asked to be restored to full military posture and to be ordered to a military medical facility for observation and evaluation of his mental condition. This request was also unsuccessful, and is discussed more fully below.

Finally, on December 7, 1981, plaintiff applied to the Correction Board once more requesting disability retirement for a service-connected nervous condition. Though brought more than twenty-eight years after his discharge, the Board excused the untimeliness and heard the merits of his claim, but denied relief. This suit to review that decision followed.

On these motions for summary judgment, defendant challenges plaintiff's disability retirement claim on alternative grounds. It claims it is barred by the statute of limitations, laches, and res judicata; it also argues that the Board's decision is supported by substantial evidence, and is not arbitrary, capricious, or contrary to law.

### Discussion

The court concludes the statute of limitations jurisdictionally bars the claim. Defendant's alternative arguments, though persuasive, need not be addressed.

Under 28 U.S.C. § 2501, claims over which this court "has jurisdiction shall be barred unless the petition thereon is filed

within six years after such claim first accrues." Generally, a claim for disability retirement accrues according to the rules the Court of Claims set out in *Friedman v. United States*, 310 F.2d 381, 395, 159 Ct.Cl. 1 (1962). There the court, in pertinent part, said,

> (a) The judicial claim for disability retirement pay does not accrue on release from active duty but rather on *final* action of a board competent to pass upon eligibility for disability retirement (or upon refusal of a request for such a board).
>
> (b) Normally, the Retiring Board is the proper board, but where the claimant has not had or sought a Retiring Board, his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement)....

Plaintiff says that under these rules his disability claim did not accrue until the most recent Board for the Correction of Military Records denied his application on July 22, 1983. When the rules are applied to our facts, however, it is apparent the claim arose long before.

■ Under *Friedman*, a disability retirement cause of action accrues upon final action of a correction board only "where the claimant has not had or sought a Retiring Board." 310 F.2d at 396, 159 Ct.Cl. 1. The record shows that plaintiff inquired about a physical evaluation board while he was hospitalized in 1953. It is uncontradicted that one of the military doctors told him then that he could not have one. A physical evaluation board, of course, is the successor to the "Retiring Board" discussed in *Friedman*. 310 F.2d at 390 n. 10, 159 Ct.Cl. 1; *Lipp v. United States*, 301 F.2d 674, 676, 157 Ct.Cl. 197 (1962). If this is not a sufficient request for and refusal of a physical evaluation board as contemplated by *Friedman*, it is nevertheless significant evidence of plaintiff's awareness of his supposed condition. Indeed, plaintiff does not dispute that he was aware of his

asserted mental illness before he was discharged. His brief states, "[T]he unrefuted record shows that the illness, first manifested in 1951...." And he continuously reiterated this awareness through the years since 1953.

■ *Gerber v. United States*, 2 Cl.Ct. 311, 318 (1983), says that where one has knowledge of a disability, the *Friedman* accrual rules are not blindly followed. They are primarily concerned with protecting "late-discovered claims." Like *Gerber*, our plaintiff was "properly alerted to his disability" more than thirty years before his petition was filed. *Id.* When claiming the benefit of its accrual rules, the intent and purpose of *Friedman* to protect "veterans ... who did not know they were ill or did not appreciate the progressive or serious character of their disease or disability" cannot be avoided. 310 F.2d at 402; *see also Gerber*, 2 Cl.Ct. at 318.

Plaintiff is not in this category. His claim arose many years before the 1983 decision of the Correction Board. Because he had knowledge of his disability as early as 1951, and certainly by 1953, he cannot wait thirty years before bringing his claim here.

The same is true if, as defendant says, plaintiff was barred by Air Force Regulation 36–12 ¶ 4b(3) (1952), from disability retirement unless he was psychotic and his misconduct was the proximate result of the psychosis. He resigned for the good of the service in lieu of court-martial. He knew of his condition then and any challenge to the regulation or its applicability to him was barred six years later. His 1960 Court of Claims case established that he was not psychotic. *Stampados*, 150 Ct.Cl. at 413.

■ Even the most rigid interpretation and formalistic requirements of *Friedman* have been satisfied in this case. If the 1953 inquiry about and refusal of a physical evaluation board does not satisfy the requirement that a board be requested and denied before time on a claim for disability begins to run, plaintiff's January 30, 1966, application to the Board for the Correction

of Military Records suffices as a request for a determination of his eligibility for disability retirement. The denial by that Board on June 16, 1966, is a refusal of that request. Indeed, the excerpt of the 1955 record of the Correction Board included in his application before the 1966 Board shows this was at least the second time plaintiff had been refused a disability evaluation. However, except for that excerpt, it appears the 1955 record has been lost or destroyed and the court expresses no view on its significance.

But in 1966 plaintiff's application said that "[i]ncomplete medical diagnosis of illness which incapacitated applicant from 1953 to this date" was a basis for correcting his records. He discussed his mental competence throughout that application. He incorporated the minority report from his 1955 Board and said that it "constitutes applicant's conclusions to this case." That report comprehensively discusses the question of his mental competence and recommends · that plaintiff "be restored to full military posture and be ordered to a military medical facility for observation and determination of his present mental condition." That was plaintiff's request of the 1966 Board, and it is what the Board denied.

Any cause of action he may have had for failure to award disability retirement accrued on June 16, 1966, at the latest. The statute of limitations began to run then and expired in 1972. The complaint filed here in 1984 is barred and the court has no jurisdiction. The gratuitous waiver of the timely filing requirement by the 1983 Board, a permissive forum, cannot expand the statutory jurisdiction of this court. *Cf. Friedman,* 310 F.2d at 396, 159 Ct.Cl. 1.

Plaintiff's allegation of a mental disability does not suggest a legal disability sufficient to toll the statute of limitations. The Court of Claims found that plaintiff was not insane when he resigned. His understanding of his legal rights and responsibilities, manifested by his 1953 request for a physical evaluation board, and his many other attempts to obtain relief over the years, also demonstrate that he was not under a legal disability. *See Gerber,* 2 Cl.Ct. at 317; *Warner v. United States,* 225 Ct.Cl. 717, 718 (1980).

### Conclusion

Accordingly, defendant's motion for summary judgment is GRANTED, plaintiff's cross-motion for summary judgment is DENIED, and the case will be DISMISSED with costs to defendant.